436 Mass. 677 (2002)                                    677

Tremont Tower Condominium, LLC *v.* George B.H. Macomber Company.

## TREMONT TOWER CONDOMINIUM, LLC *vs.* GEORGE B.H. MACOMBER COMPANY.

Suffolk. February 6, 2002. - May 3, 2002.

Present: Marshall, C.J., Greaney, Ireland, Spina, Cowin, Sosman, & Cordy, JJ.

*Contract,* Construction of contract. *Lien. Mechanic's Lien. Statute,* Construction.

A general building contractor that voluntarily dissolved, prior to the expiration of any relevant time period, a mechanic's lien under G. L. c. 254, § 10, which had previously been created by a filing of a notice of contract, could not be prevented from later creating another mechanic's lien by recording another timely notice of contract. [679-689]

Civil action commenced in the Superior Court Department on May 3, 2001.

The case was heard by *Judith Fabricant,* J.

The Supreme Judicial Court granted an application for direct appellate review.

*Edward J. Naughton* (*Robert V. Lizza & John W. DiNicola, II,* with him) for the defendant.

*Kenneth R. Berman* for the plaintiff.

*Joel Lewin & Michael D. Healan,* for Associated General Contractors of Massachusetts, Inc., amicus curiae, submitted a brief.

Sosman, J. The defendant, George B.H. Macomber Company (Macomber), appeals from a judgment discharging a mechanic's lien and a notice of contract recorded on certain real property owned by the plaintiff, Tremont Tower Condominium, LLC (Tremont Tower). See G. L. c. 254, § 15A. We granted Macomber's application for direct appellate review. On March 14, 2002, we issued an order reversing the judgment of the Superior Court and remanding the case for further proceedings. This opinion explains the basis for our conclusion that the voluntary dissolution of a mechanic's lien under G. L. c. 254, § 10, does

678                                                436 Mass. 677 (2002)

Tremont Tower Condominium, LLC *v.* George B.H. Macomber Company.

not prevent a contractor's later recording of another timely notice of contract.

1. *Background.* The essential facts are not in dispute. In a contract dated December 2, 1999, Tremont Tower, owner of a development project in downtown Boston, engaged Macomber as the general contractor for the construction of a condominium building. On February 15, 2000, Macomber recorded a notice of this contract in the Suffolk County registry of deeds, thereby establishing a mechanic's lien on the Tremont Tower property to secure payment for labor and materials. G. L. c. 254, § 2. According to the president and chief executive officer of Macomber, Tremont Tower thereafter advised that the project lenders would not fund applications for loan advances because Macomber had established a lien on the property, and asked that Macomber withdraw the notice of contract. On March 3, 2000, Macomber dissolved the lien by recording a notice of dissolution in the registry of deeds. G. L. c. 254, § 10.

Construction on the project moved forward without dispute for approximately one year. At the insistence of Tremont Tower and its lenders, Macomber executed a partial waiver and subordination of lien each month, in accordance with G. L. c. 254, § 32, as a condition of payment. In the spring of 2001, however, a dispute arose between Tremont Tower and Macomber, with Macomber claiming over $3 million in past due payments. On April 23, 2001, Macomber recorded a second notice of contract. Macomber alleges that Tremont Tower again advised that the lenders would not fund amounts due under Macomber's applications for payment because of the filing of another notice of contract.

On May 2, 2001, Tremont Tower applied to the Superior Court for a discharge of Macomber's notice of contract, arguing that Macomber could not again claim a mechanic's lien on the property when it had previously filed a notice dissolving the lien. Macomber counterclaimed and filed a claim against the lenders, seeking an order enjoining all of the parties from refusing to fund work on the development project because of the notice of contract. See G. L. c. 254, §§ 15A, 33.

A judge in the Superior Court ruled in favor of Tremont Tower, holding that the prior notice of dissolution permanently

barred Macomber from filing another notice of contract. She noted that "[t]his result is harsh, and arguably inconsistent with the purpose of the statute to provide contractors with effective security for payment for work performed," and expressed concern that Macomber's earlier notice of dissolution "may have resulted from conduct on the part of the owner and/or its lender that could fairly be construed as an effort to circumvent the prohibition of [G. L. c. 254,] § 32."[1] She felt constrained, however, by prior precedent from this court (which she characterized as "similarly harsh"), to interpret the notice of dissolution as a permanent dissolution, citing *Mullen Lumber Co.* v. *Lore*, 404 Mass. 750, 756-757 (1989), and *Blount Bros. Corp.* v. *Lafayette Place Assocs.*, 399 Mass. 632, 636-639 (1987).

2. *Discussion.* Mechanic's liens are created and governed purely by statute. See G. L. c. 254. "The primary purpose of the lien is to provide security to contractors, subcontractors, laborers, and suppliers for the value of their services and goods provided for improving the owner's real estate. . . . At the same time, the statute contains filing and notice requirements to protect the owner and others with an interest in the property." (Citations omitted.) *Hammill-McCormick Assocs., Inc.* v. *New England Tel. & Tel. Co.*, 399 Mass. 541, 542-543 (1987). We look then to the statutory provisions concerning the creation, perfection, and enforcement of a lien to determine whether Macomber has met the statutory prerequisites for a valid and enforceable lien.

A person who has entered into a written contract with an owner of real property for improvements to that property, or for the furnishing of equipment, appliances, or tools for such improvements, "shall have a lien upon such real property . . . to secure the payment of all labor, including construction management and general contractor services, and material or rental equipment, appliances, or tools which shall be furnished

---

[1]That section declares void and unenforceable, as against public policy, any agreement or understanding "purporting to bar the filing of a notice of contract or the taking of any steps to enforce a lien." G. L. c. 254, § 32. The statute also prohibits a lender from withholding funds on account of a contractor's filing of a notice of contract or requiring dissolution as a condition for fund advances. G. L. c. 254, § 33.

680                                              436 Mass. 677 (2002)

Tremont Tower Condominium, LLC *v.* George B.H. Macomber Company.

by virtue of said contract." G. L. c. 254, § 2. In order to claim such a lien, the contractor must record a "notice of contract" in the registry of deeds for the county in which the property is located. *Id.* The statute sets a deadline for the recording of such a notice of contract, and calculates that deadline according to the way that the contract is either terminated or completed. If the parties to the contract have filed a notice of substantial completion (signifying the parties' agreement that the "work under the written contract is sufficiently complete so that it can be occupied or utilized for its intended use," G. L. c. 254, § 2A), the contractor must file the notice of contract no later than sixty days after the filing of the notice of substantial completion. G. L. c. 254, § 2. If the contract has been terminated and the owner has filed a notice of termination (see G. L. c. 254, § 2B), the contractor must file the notice of contract no later than ninety days after the filing of the notice of termination. G. L. c. 254, § 2. Or, in the absence of any such notice of substantial completion or notice of termination, the deadline for filing a notice of contract is ninety days after the contractor "last performed or furnished labor or materials or both labor and materials." *Id.* A notice of contract may be recorded "at any time after execution of the written contract," as long as it is recorded before the applicable deadline. *Id.*

The recording of the notice of contract establishes the priority of the mechanic's lien. As a general matter, the lien takes priority over all other later-recorded encumbrances on the property.[2] Thus, once filed, the notice of contract sets the date for the lien's priority.

The enforcement of the lien requires further steps, which must also be performed within time frames established by the statute. The contractor must record a statement of account, setting forth the amount due or to become due. G. L. c. 254, § 8. That statement of account must be filed within ninety days of the filing of a notice of substantial completion; within 120 days of the filing of a notice of termination; or within 120 days after the contractor last performed or furnished labor, materials,

[2]The principal exception is for the so-called "rolling lien" provided by G. L. c. 254, § 32 (4), which creates a procedure for partial waivers and subordination of lien rights in exchange for advances by secured lenders.

equipment, appliances, or tools for the project, whichever is earliest. *Id.* Failure to file a statement of account within these time frames results in the lien's being "dissolved." *Id.* After filing the statement of account, the contractor has a brief period of time in which to enforce the lien. A civil action must be filed within ninety days of the recording of the statement of account, and, within thirty days of filing that suit, the contractor must record an attested copy of the complaint. G. L. c. 254, §§ 5, 11. Again, the lien "shall be dissolved" if the contractor fails to meet either of those deadlines. *Id.*

Beyond such automatic dissolution of the lien for failure to meet the statutory deadlines, the statute provides for voluntary dissolution as follows: "The lien of any person may, so far as his interest is concerned, be dissolved by a notice signed by him, stating that his lien is dissolved, filed in the registry of deeds where the notice of the contract is filed under which contract the lien is claimed." G. L. c. 254, § 10.

Here, there is no dispute that Macomber filed both its notices of contract within the time frame set by § 2. Macomber relies on the literal language of that section, which allows such a notice to be filed "at any time," and contains no prohibition on the filing of subsequent or duplicate notices. `

The issue, however, centers on Macomber's filing of a notice voluntarily dissolving its lien after its first notice of contract was recorded. Macomber contends that what was dissolved by that notice was the originally filed notice of contract, i.e., that Macomber forfeited the "priority position" it had acquired by that first filing, but did not extinguish the underlying right to a lien. The right to a mechanic's lien still existed, and could be perfected and enforced by later filings (as long as they were timely), but the priority of that lien would only be established as of the later date when the second notice of contract was recorded. According to Macomber, the lien itself is only created on the filing of the notice of contract, and therefore a notice dissolving that lien dissolves only the precise lien that was created by that filing. Dissolving that lien does not forfeit the right to another lien being established sometime in the future.

Tremont Tower argues, however, that a lien is created by the mere signing of the construction contract, and is thus in exist-

ence prior to any recording of the notice of contract. Recording the notice of contract only establishes the priority of an already existing lien. Thus, it argues, a notice dissolving the lien permanently dissolves the underlying lien itself, and not just its priority position. As such, Tremont Tower contends, there was no lien remaining after Macomber's notice of dissolution was filed, and thus no basis for filing the second notice of contract to prioritize a nonexistent lien. The judge in the Superior Court agreed with Tremont Tower that the lien came into being at the time the underlying construction contract was signed, not at the time the notice of contract was filed, and that a notice of dissolution of lien therefore dissolved the entirety of the lien rights that had been created by the construction contract.

We disagree. Although the wording of the statute is not perfectly clear on this point, it tends to support Macomber's position. It does not appear that any form of "lien" actually exists prior to recording a notice of contract. The contractor has a statutory right to such a lien, but the lien itself does not exist until the contractor does something to assert that right.

Under § 2, a contractor entering into a written contract "shall have a lien upon such real property, land, building, structure or improvement owned by the party with whom or on behalf of whom the contract was entered into, *as appears of record on the date when notice of said contract is filed or recorded in the registry of deeds* for the county or district where such land lies, to secure the payment of all labor" (emphasis added). By the statute's reference to the owner appearing of record at the time the notice of contract is filed, the creation of the lien appears tied to that filing. Similarly, the provision for voluntary dissolution of a lien references a filing of that notice of dissolution "in the registry of deeds where the notice of the contract *is filed*" (emphasis added). G. L. c. 254, § 10. The wording of § 10 assumes that a notice of contract is already on file, and makes no reference to dissolving any form of lien that would exist without such a filing, i.e., it does not speak in terms of filing the notice of dissolution in the registry of deeds where the notice of contract "is required to be filed," but refers only to the registry where the notice "is filed." *Id.* If, as Tremont Tower argues, a lien exists prior to any recording of a notice of contract, one

would expect that the statute's provisions on voluntary dissolution of a mechanic's lien would be worded so as to include dissolution of that form of lien as well. Instead, the dissolution provisions appear to presuppose the earlier filing of a notice of contract. This is consistent with Macomber's interpretation that no actual "lien" exists prior to the recording of that notice.

Other provisions reinforce this interpretation. Notably, the statute provides that the "lien shall be dissolved" for a contractor's failure to meet the other deadlines in the statute — failure to file a statement of account, to file a timely civil action, or to record a timely notice of that action. G. L. c. 254, §§ 5, 8, 11. The statutory provision for the filing of the notice of contract, however, does not make any reference to the lien being "dissolved" for failure to file the notice of contract in time. G. L. c. 254, § 2. It sets the deadlines for that initial filing, but does not speak of any preexisting lien that is to be "dissolved" if those deadlines are missed. *Id.* By implication, the lien never comes into being unless and until a notice of contract is recorded, and, if some subsequent deadline is missed, only then is that lien "dissolved."

Finally, the provision prohibiting agreements requiring a contractor to forgo its lien rights also suggests that it is the notice of contract that creates the lien. The statute forbids contractual provisions "purporting to bar the filing of a notice of contract *or* the taking of any steps to enforce a lien" (emphasis added), G. L. c. 254, § 32, suggesting that the filing of the notice of contract is not itself a mere "step[] to enforce" a preexisting lien but rather the step that creates the lien in the first instance.

Thus, although there is no express articulation in the statute concerning the precise moment at which a lien under § 2 comes into being, the terms of the statute appear to presuppose that the lien is created by the filing of the notice and that no lien exists prior to such filing. As such, what is dissolved by a voluntary notice of dissolution is whatever lien was created by the prior filing of a notice of contract. The notice of dissolution does not take away the contractor's underlying right to assert a lien, assuming that all statutory requirements, including all deadlines, are still met.

The Superior Court also relied on this court's prior decisions in *Mullen Lumber Co.* v. *Lore*, 404 Mass. 750, 756-757 (1989), and *Blount Bros. Corp.* v. *Lafayette Place Assocs.*, 399 Mass. 632, 636-639 (1987), in determining that the notice of dissolution should permanently extinguish the contractor's lien rights. In *Blount Bros. Corp.* v. *Lafayette Place Assocs.*, *supra* at 637, we held that the general contractor's notice of contract was defective for failing to include the contract completion date (which was required by an earlier version of § 2), and that that defective filing "did not establish a valid lien." In *Mullen Lumber Co.* v. *Lore*, *supra*, the contractor had filed a timely notice of contract and a timely statement of account, but had failed to commence a civil action within the time period set by § 11, which runs from the time of filing the statement of account. The contractor then sought to file another statement of account, as the deadline for filing such a statement had not yet lapsed. This court held that the expiration of the time in which to bring the civil action had caused the lien to dissolve in accordance with § 11, and that allowing the contractor to start the time period running again by filing another statement of account would effectively give the contractor a "period greater" than that intended by the Legislature.[3] *Id.* at 756.

These cases stand for the proposition that strict compliance with the requirements of the statute are required in order to create and enforce a mechanic's lien. That a contractor cannot refile for a lien after a critical deadline has lapsed does not mean that a lien voluntarily dissolved prior to the expiration of any relevant time period permanently precludes the contractor from creating and enforcing a lien. Strict compliance with the statute is required under the principles of *Mullen Lumber Co.* v. *Lore*,

---

[3]Tremont Tower points to references in *Mullen Lumber Co.* v. *Lore*, 404 Mass. 750, 755 n.5, 756 (1989), to the effect that there "can be but one lien," and that the mechanic's lien law "provides for the creation of a single lien," taking those references out of context to suggest that a voluntarily dissolved lien can never be reestablished. However, those references were made in the context of explaining that a lien that has forcibly expired due to failure to meet a required deadline cannot be recreated. *Id.* The court cited to *Hilliard* v. *Allen*, 4 Cush. 532, 535-536 (1849), in support of the proposition that there "can be but one lien." *Mullen Lumber Co.* v. *Lore*, *supra* at 756-757. *Hilliard* v. *Allen*, *supra*, similarly involved a lien that had dissolved because the contractor had failed to file suit within the required time period.

*supra*, and *Blount Bros. Corp.* v. *Lafayette Place Assocs.*, *supra*, but there has been no failure to satisfy any deadline or substantive filing requirement in the present case.

As the judge noted, denying Macomber's lien appears inconsistent with the over-all intent of the statute. We glean further insight into that intent, and further insight into the Legislature's intent with respect to the purpose and impact of voluntary dissolution, by examining the history underlying a major revision of the mechanic's lien statute that occurred in 1996. See St. 1996, c. 364.

Under the former law, a contractor was required to file the notice of contract prior to the completion date set forth in the contract itself. See *Blount Bros. Corp.* v. *Lafayette Place Assocs.*, *supra*. As illustrated by the facts of that case, however, the actual completion date of the work often occurred far beyond the date optimistically identified in the original contract. Disputes concerning payment might well emerge later on in the work, by which time the filing deadline had already passed. See Comment, Construction — Mechanics' Lien, 81 Mass. L. Rev. 167, 168 (1996) ("The completion date, not necessarily reflecting the actual work schedule, would often pass unnoticed by the time a claimant decided to seek a lien"). In order to avoid permanent loss of its right to assert a lien, a contractor had to file a notice of contract by the (unrealistic) completion date set forth in the contract, and thereby encumber the owner's title, even in the absence of any dispute between the contractor and the owner.

The Legislature addressed this problem by setting the various deadlines for filing the notice of contract, each of which reflected the differing methods by which a contract could effectively end, and specifying that the contractor could file the notice "at any time" prior to those deadlines. G. L. c. 254, § 2, as appearing in St. 1996, c. 364, § 2. If, as Tremont Tower contends, that language allowing the filing of a notice of contract "at any time" does not allow a contractor to reassert a lien after the filing of a notice of dissolution, that limitation would resurrect one of the very problems that the Legislature intended to address. Today's construction projects often last over a period of many years, and, as in *Blount Bros. Corp.* v.

*Lafayette Place Assocs., supra,* there is no telling in advance precisely when disputes will occur over the course of a large project, and there is no predicting how many times they will erupt. If, in the course of the first such dispute, a contractor sought to protect its rights by filing a notice of contract, Tremont Tower's interpretation of the statute would effectively preclude the contractor from dissolving that lien. Despite the parties' resolution of whatever the payment dispute was at that point in the project, the contractor could not dissolve the lien without forever losing the entirety of its lien rights. The only way to keep those rights would be to leave the notice of contract in place, encumbering the property, and clouding the title for the remainder of the project.

It is preferable, for all concerned, that interim resolution of such disputes allow for removal of the lien. Thus, for example, when an initial dispute over payment is resolved satisfactorily, the contractor should be able to clear the owner's title of the lien as part of that resolution, without giving up its right to assert a lien in the event of payment problems reoccurring later on during the project. A cooperative contractor, acceding to an owner's request that the lien be removed once the appropriate interim payment has been made, should not then be penalized by having all its lien rights permanently extinguished. Nor should an owner, who has come current on all payments due to the contractor on an ongoing job, be saddled with a cloud on title for the duration of the project. We will not penalize Macomber for complying with the more conciliatory process envisioned by the new statute, nor will we reward Tremont Tower for attempting to propagate the adversary process of old. Macomber's proposed literal interpretation of the "at any time" language in § 2 is in keeping with the apparent intent to remove some of the traps, barriers, and needless wrangling associated with former mechanic's lien practices.

Macomber also points out that it is a common industry practice to dissolve a lien pursuant to § 10 and reassert a lien at a later date by filing another notice of contract. For example, this procedure is used to clear the title so that construction

funding can have priority over the mechanic's lien.[4] There is much to support Macomber's claim that this is indeed a widespread industry practice.[5] An industry practice, standing

---

[4]The so-called "rolling lien" provisions of G. L. c. 254, § 32 (4), as appearing in St. 1996, c. 364, § 22, address lenders' concerns in part by providing for partial waiver and subordination of the general contractor's liens, but those provisions do not provide for subordination of liens filed by subcontractors. Thus, as explained in the helpful amicus brief of Associated General Contractors of Massachusetts, Inc., subcontractors routinely secure progress payments by filing a notice of contract, dissolving the lien upon receiving the progress payment (thereby clearing the title for the lender's advance and allowing further payment to the general contractor), and then filing another notice of contract to secure the next progress payment.

Tremont Tower correctly notes that G. L. c. 254, § 33, now prohibits lenders from insisting on a "dissolution" of the notice of contract as a condition of financing, substituting instead the "rolling lien" as the sole mechanism by which lenders may protect themselves against a previously recorded lien. That prohibition, however, applies only to notices of contract filed by general contractors under § 2, with respect to certain types of projects, and not to subcontractors filing such notices under § 4. Section 33 expressly allows lenders to withhold advances if notices have been filed under § 4, leaving notice of dissolution, followed by refiling, as the sole method by which subcontractors (and general contractors on certain projects) can accommodate lenders' concerns. Where, as is alleged here, the lender's improper insistence that a general contractor dissolve its § 2 lien as a condition of funding has resulted in the general contractor utilizing the same device properly used by subcontractors, it would be perverse to deny Macomber that device and reward the lenders for their misconduct. While such misconduct would not operate to extend any of the deadlines of the lien law, see *Blount Bros. Corp.* v. *Lafayette Place Assocs.*, 399 Mass. 632, 637-639 (1987), it should not result in depriving Macomber of an alternative method, timely utilized, to protect its interests.

[5]See D.E. Wilson, The Subcontractor's and Supplier's Perspective, A Practical Approach to Mechanics Liens 109, 120 (Mass. Continuing Legal Educ. 1996) (recommending that subcontractors utilize procedure of filing, dissolving, and refiling their liens). We also note that, in another recent case involving a dispute over a mechanic's lien, the contractor had dissolved its lien when an earlier dispute with the owner was resolved, and then later refiled a notice of contract when another dispute arose. No argument was raised concerning any permanent waiver of lien rights as a product of the prior dissolution. See *Ng Bros. Constr., Inc.* v. *Cranney, ante* 638 (2002). Finally, we note that, notwithstanding Tremont Tower's claim that Macomber had no lien and could never have any lien after the filing of the notice of dissolution, Tremont Tower and its lenders continued to require that Macomber provide them with the requisite partial waiver and subordination of lien each time that the lenders made a further advance. Macomber has done so. The parties were not operating on any assumption that Macomber's lien rights were permanently foreclosed by the prior notice of dissolution.

688 436 Mass. 677 (2002)

Tremont Tower Condominium, LLC *v*. George B.H. Macomber Company.

alone, does not necessarily dictate our construction of a statute, see *Xtra, Inc.* v. *Commissioner of Revenue*, 380 Mass. 277, 281 (1980), citing *First Fed. Sav. & Loan Ass'n* v. *State Tax Comm'n*, 372 Mass. 478, 483 (1977), aff'd, 437 U.S. 255 (1978), but that practice may be helpful in discerning the Legislature's intent. Here, there is no reason to believe that, in revising the mechanic's lien statute, the Legislature intended to eliminate this practice. Indeed, the Legislature left in place the statute's prohibition on contract provisions barring the filing of a notice of contract or the enforcement of liens, or purporting to subordinate those liens, but included in the list of exceptions to that prohibition "dissolutions of liens under [§ 10]." G. L. c. 254, § 32 (3). This reference to dissolutions under § 10 appears to be a recognition of the industry practice, and suggests that the Legislature did not intend to change it.[6] Rather, while owners could not categorically require contractors to forgo or subordinate their lien rights, the Legislature left in place the use of notices of dissolution over the course of such contracts. We see no reason to read into the statute a prohibition on the refiling of a notice of contract after an earlier notice has been voluntarily dissolved.

Finally, Tremont Tower argues that allowing contractors to refile a notice of contract after having recorded a notice of dissolution will prejudice persons who rely on that notice of dissolution. We are unpersuaded. Examiners who find a notice of dissolution on record are in no worse position than examiners who find no notice of contract yet filed. Until the time in which to file a notice of contract has expired, a valid lien may still be recorded. Examiners who find nothing on the record cannot be assured that there is no potential for any future liens. If anything, an examiner who finds a notice of contract followed by a notice of dissolution has at least been alerted to the existence of a contract that could give rise to a later, valid lien. Moreover, in light of the widespread use of such dissolutions and later refilings, we doubt that a notice of dissolution would

[6]The only apparent change was that, as to most general contractors, lenders could not *require* dissolution as a condition of funding. See note 4, *supra*. That lenders may not require dissolution does not prevent contractors from doing so as an accommodation to owners or as part of any voluntary arrangement with lenders.

mislead an examiner or cause the examiner to believe that no lien would be recorded in the future.[7]

Thus, the sole defect on which Tremont Tower sought to invalidate Macomber's lien is not a defect, and the judgment in favor of Tremont Tower is therefore reversed. Macomber's counterclaim against Tremont Tower and its claims against the lenders were dismissed because they were premised on the existence of a valid lien. We therefore remand the matter for further proceedings on Macomber's claims consistent with this opinion.

---

[7]Tremont Tower's lenders were not so misled, but rather insisted on Macomber's providing a partial waiver and subordination of lien for each subsequent funding advance, notwithstanding the prior recording of a notice of dissolution.