Troy, J.
Plaintiffs Davenport Mammoet Heavy Transport, Inc. and Mammoet USA, Inc. (“Mammoet”) filed a complaint to enforce a mechanic’s lien against the defendant Entergy Nuclear Generation Company (“Entergy”). Mammoet sought a mechanic’s lien to recover payment of its services in transporting a transformer from Waterford, Connecticut to Plymouth, Massachusetts, and for the cost of placing the transformer on a storage pad at Entergy’s power plant. Mammoet performed these services as a subcontractor under a written contract between Entergy and the now bankrupt Ohio Transformer Inc. a/k/a Grand Eagle (“Ohio Transformer”).
BACKGROUND
Entergy is a Delaware corporation licensed to do business, and is conducting business, in the Commonwealth of Massachusetts at 600 Rocky Hill Road, Plymouth, Massachusetts. Entergy operates the Pilgrim Nuclear Power Station in Plymouth, Massachusetts. In December of 2000, Entergy bought a transformer[2] from a company named NSTAR. The transformer was stored at the Millstone Nuclear Power Station in Waterford, Connecticut, awaiting transport to the Pilgrim Nuclear Power Station. Entergy bought the transformer to serve as a spare in the event that the current transformer operating at the Pilgrim Nuclear Power Station needed repair or maintenance. In November of 2001, Entergy entered into a written contract with Ohio Transformer which is engaged in the business of general contracting and repairs of nuclear generators. The written contract provided that in exchange for payment from Entergy, Ohio Transformer agreed to, among other things, remove the transformer from the Millstone Nuclear Power Plant in Waterford, Connecticut and deliver it to the Pilgrim Nuclear Power Station. In addition to transporting the transformer, Ohio Transformer agreed to “dress”[3] the transformer at the Pilgrim Nuclear Power Station. The cost of transporting the transformer from the Millstone Power Plant to the Pilgrim Nuclear Power Station was $388,000. The cost for dressing the transformer was $132,463.
Through an Order form dated November 30, 2001, Ohio Transformer subcontracted with Mammoet (Purchase order # 560074) which is in the business of transporting heavy equipment and provides labor in the form of transportation, delivery and assembly of heavy equipment and structures. Pursuant to the terms of the invoice, Mammoet agreed to “transport [the] transformer from Millstone Power Plant via truck and barge to Pilgrim Power Plant and set on pad,” in exchange for the payment of $312,640.[4] It is undisputed that Mammoet did not contract to perform the dressing of the transformer at the Pilgrim Nuclear Power Station. Rather, Ohio Transformer retained the obligation to perform the dressing in June of 2002.
On or about December 1, 2001, Mammoet completed the transport and placement of the transformer at the Pilgrim Nuclear Power Station. On or about December 5, 2001, Ohio Transformer billed Entergy in the amount of $388,000, for its services pursuant to the contract. Entergy then paid Ohio Transformer $388,000.
After Mammoet transported the transformer, but before it was paid by Ohio Transformer, Ohio Transformer filed for bankruptcy.[5] Because Mammoet has not been paid, on February 5, 2002, Mammoet filed a Notice of Contract and Statement of Account in the Plymouth County Registry of Deeds establishing a mechanic’s lien against Entergy, pursuant to G.L.c. 254, in the amount of $312,640.
*134 On May 28, 2002, Entergy answered the complaint and filed a verified counterclaim seeking to dissolve the mechanic’s lien pursuant to G.L.c. 254, §15A. On September 11, 2002, defendant/plaintiff-in-counterclaim Entergy filed a motion for summary judgment. That motion is before the court.
DISCUSSION
Summary judgment is appropriate where there are no genuine issues of material fact and where the summary judgment record entitles the moving party to judgment as a matter of law. Kourouvacilis v. Gen. Motors Corp., 410 Mass. 706, 713-14 (1991). The moving party bears the burden of affirmatively demonstrating that there is no genuine issue of material fact. Pederson v. Time, Inc., 404 Mass. 14, 17 (1989). The court decides any conflicts in the materials and all logical permissible inferences in favor of the non-moving party. See Willitts v. Roman Catholic Archbishop of Boston, 411 Mass. 202, 203 (1991).
A. G.L.c. 254, §1
Prior to 1996, G.L.c. 254, §1 (“the mechanic lien’s statute”) provided in pertinent part that:
[a] person to whom a debt is due for personal labor performed in the erection, alteration, repair or removal of a building or structure upon land, by virtue of an agreement . . . shall . . . have a lien upon such building or structure and upon the interest of the owners thereof in the lot of land . . .
Id. The statute was highly criticized because it set forth a narrow definition of claimants, which limited mechanic lien rights to those who furnished labor and materials for “a building or structure.” See Lizza, The Massachusetts Mechanic’s Lien Law, §3.1, at 3-2 (MCLE 2001). By restricting the type of claimants entitled to a mechanic’s lien, a number of entities including landscapers and road building and paving contractors, who improved the value of land, were excluded from the protection of the mechanic’s lien statute. 81 Mass.L.Rev. 167 (1996).
In an attempt to resolve concerns regarding the scope of the statute, and after holding meetings and obtaining input from contractors, subcontractors, bankers, title insurers and other interested parties, the Legislature amended the statute in 1996. 81 Mass.L.Rev. 167 n.7 (1996). The pertinent parts of the amended mechanic’s lien statute provide that:
[a] person to whom a debt is due for personal labor performed in the erection, alteration, repair or removal of a building or structure upon land or improvement or alteration to real property, by virtue of an agreement with . . . the owner ... or of a person having authority from or rightfully acting for such owner in procuring or furnishing such labor, shall . . . have a lien upon such building or structure and upon such interest in such real property, land, building, structure, or improvement owned by the party authorizing or consenting to said work...
G.L.c. 254, §1, amended by St. 1996, c. 364, §1.
The amended G.L.c. 254, §2, provides that:
[a] person entering into a written contract with the owner of any interest in real properly, or with any person acting for, on behalf of, or with the consent of such owner for the whole or part of the erection, alteration, repair or removal of a building, structure, or other improvement to real property, or for furnishing material or rental equipment, appliances, or tools therefor, shall have a lien upon such real property, land, building, structure or improvements owned by the party with whom or on behalf of whom the contract was entered into . . .
G.L.c. 254, §2, amended by St. 1996, c. 364, §2. The new statutory language, among other things, “expand[ed] the scope of property subject to mechanic’s liens; the nature of labor, materials and equipment for which a lien [could] be claimed; and the types of contract upon which a lien [could] be based.” Lizza, The Massachusetts Mechanic’s Lien Law, §3.1, at 3-1 (MCLE 2001).
The question in this case is whether the work performed by Mammoet constitutes the furnishing of labor and/or materials in connection with the “improvement to real property.” See G.L.c. 254, §§1, 2. After analyzing the facts in this case, the court concludes that the services provided by Mammoet are not the type of services the Legislature intended to protect under the mechanic’s lien statute. Thus, Mammoet is not entitled to the protection of the mechanic’s lien statute.
It is undisputed that Entergy contracted with Ohio Transformer to transport and dress the transformer, and that Ohio Transformer then subcontracted with Mammoet to perform the transportation and relocation of the transformer. The court recognizes that the transfer and placement of the transformer on the storage pad in Plymouth was an extremely difficult and complicated task, and that it required highly technical skills and training. However, those facts alone do not entitle Mammoet to a mechanic’s lien on Entergy’s property. The services provided by Mammoet must fall within the statute entitling it to a mechanic’s lien.
The amended mechanic’s lien statute requires that the subcontractor perform some improvement to the property. See G.L.c. 254, §§1, 2, amended by St. 1996, c. 364, §§1, 2. The theoiy entitling certain entities to a mechanic’s lien flows from the fact that an entity provided certain materials or services which improved the value of the land. See Tremont Tower Condominium, LLC v. George B.H. Macomber Co., 436 Mass. 677, 679 (Mass. 2002). Thus, because the owner’s property is worth more because of the entity’s materials and/or services, the entity is entitled to encumber the property it improved to recover its fees. Id.
*135 In this case, the court cannot say that the transportation of the transformer from Connecticut to the Pilgrim Nuclear Power Station improved Entergy’s land within the meaning of G.L.c. 254. The court recognizes that in the event that the current operating transformer needs maintenance or repair, this backup transformer could be critical to Entergy’s operations. However, it is also an inoperable piece of equipment that may be sold or otherwise never used. It is not attached to or even located next the Pilgrim Station’s electricity generator. When and if Entergy decides to use this spare transformer, Entergy must remove it from its storage pad, move it to a location near the electricity generator and then connect the transformer to that generator. The court may have reached a different result had the generator been connected to the power plant. However, those facts are not before the court.
The court recognizes that the Legislature, in amending G.L.c. 254, intended to broaden and expand the type of work and the type of entities entitled to claim mechanic liens. The Legislature intended to protect entities including contractors engaged in “any activity such as landscaping, parking lot paving and stripping, environmental remediation, and clearing and grubbing . . .” Lizza, The Massachusetts Mechanic’s Lien Law, §3.3.1, at 3-5 (MCLE 2001). However, the court does not interpret the Legislature’s intent so broadly so as to include the delivery and placing of a generator on a storage pad (no matter how extensive the work required) as the type of work entitled to the protection of a mechanic’s lien because it is not an improvement to the land.
B. Dissolution of the Mechanic’s Lien
In holding that Mammoet is not entitled to a mechanic’s lien pursuant to G.L.c. 254, §§1, 2, amended by St. 1996, c. 364, §§1, 2, the court hereby discharges the mechanic’s lien against Entergy pursuant to G.L.c. 254, §15A. The court concludes that there are no genuine issues of material fact and that Entergy is entitled to judgment as a matter of law. Therefore, Entergy’s motion for summary judgment is allowed.
ORDER
For the foregoing reasons, it is hereby ORDERED that the defendant’s motion for summary judgment is ALLOWED as to the dissolution of the mechanic’s lien.

 The transformer is a large steel box, some 12 feet wide X 21 feet long X 22 feet high, weighing 376 tons. Inside the transformer is an iron core, stacked steel plates and copper windings which together weigh approximately 318 tons. A transformer is used to increase the voltage to 345 kilovolts, which is the voltage at which the electricity generated at the plant travels from the power plant to substations, where the voltage is again transformed before the electricity is distributed to Entergy’s customers.

 “Dressing” includes attaching various pumps, fans, bushings, and other components to the transformer and filling it with some 17,000 gallons of mineral oil.

 The process of setting the transformer onto the storage pad at Pilgrim Nuclear Power Station required a high degree of sophistication and expertise in engineered heavy lifting. Specifically, the transformer was slid onto the pad utilizing a jack and slide system. Next, the transformer was jacked down into a rough position onto the pad. The work that took place at Pilgrim spanned a 24-hour period and involved the use of a jack and slide system, tmcks, fork lifts, cranes, and a transporter system, among other equipment.

 Both Ohio Transformer and Grand Eagle filed respectively for bankruptcy protection in the United States District Court for the Northern District of Ohio, 01-54826-MSS and 01-54821-MSS.