The plaintiff, Midwest Construction Services, Inc., doing business as Trillium Construction Services (Trillium), appeals from a judgment entered in the Superior Court dismissing its claims against AvalonBay Communities, Inc. (AvalonBay), and Avalon Canton, Inc. (Avalon Canton), to recover monies for work performed pursuant to a subcontract with a codefendant, Superior Mechanical Plumbing and Heating, Inc. (Superior).[4] For the reasons stated below, we affirm the judgment.
Background. We summarize the undisputed facts from the summary judgment record material to the plaintiff's claims. On or about April 23, 2013, Trillium entered into an agreement with Superior to supply labor to various construction projects located in Massachusetts. One of those projects involved plumbing work for the construction of a residential apartment complex in Canton (project) owned by Avalon Canton. Avalon Canton is a wholly-owned subsidiary of AvalonBay. AvalonBay oversaw the development and managed the project for Avalon Canton.
On June 6, 2013, AvalonBay entered into a trade contract with Superior for the plumbing work at the project (trade contract). Trillium supplied the labor to Superior for the project. The terms of the trade contract provided that AvalonBay would make monthly payments to Superior upon AvalonBay's inspection of Superior's work, approval of its requisitions, and receipt of lien waivers and releases from Superior and its subcontractors and suppliers.
In connection with the trade contract, AvalonBay, Superior, and Trillium also entered into a joint check agreement (JCA), under which AvalonBay agreed that, upon receipt of Trillium's invoices, AvalonBay would issue payments to Superior in the form of joint checks payable to Superior and Trillium. The JCA provided that payments were to be made "in accordance [with the] terms and conditions of the Trade Contract between Owner [AvalonBay] and Contractor [Superior]."
From July 15, 2013, to sometime in April or May of 2014,[5] Superior worked on the project with labor supplied by Trillium. Superior submitted six applications for payment to AvalonBay for work performed from July 15, 2013, to March 31, 2014. Each payment application, except for the first, contained a partial lien release certifying that all suppliers and subcontractors had provided Superior with a corresponding lien release and that Superior had paid or would pay the subcontractors with money received from AvalonBay. Trillium also provided AvalonBay with lien waivers and releases certifying that between September 13, 2013, and March 27, 2014, Superior had fully paid Trillium for all work it had performed. Those lien waivers and releases waived any and all claims against AvalonBay through March 27, 2014. Following receipt of the lien releases, AvalonBay issued electronic disbursements and joint checks payable to Superior and Trillium between August 21, 2013, and April 21, 2014.
On April 1, 2014, five days after submitting its last lien waiver and release, Trillium's vice president contacted AvalonBay representing that Superior had failed to pay many of Trillium's invoices from September 13, 2013, through March 27, 2014, and owed Trillium $204,669.80. On April 11, 2014, Trillium advised AvalonBay that due to the outstanding monies owed, it was pulling its labor from the project. On May 8, 2014, Trillium recorded a notice of contract and a statement of account in the Norfolk County Registry of Deeds relating to the unpaid labor it supplied to Superior for work on the project. On May 9, 2014, Trillium sent notice of those recordings to Avalon Canton by certified mail. Trillium claimed in its notices that Superior failed to pay it $210,572.23 out of a total of $304,976.10.[6] On May 16, 2014, AvalonBay terminated the trade contract because Superior failed adequately to perform its work. AvalonBay then contracted with another plumbing contractor to complete Superior's work.[7] On June 3, 2014, Trillium commenced this action. The defendants filed a motion for summary judgment and, after a hearing, the judge allowed the motion and dismissed Trillium's complaint. This appeal followed.
Discussion. We review the grant of summary judgment de novo. Miller v. Cotter, 448 Mass. 671, 676 (2007).
1. Mechanic's lien. Trillium asserts a mechanic's lien against the defendants pursuant to G. L. c. 254, § 4. Under the statute, a subcontractor who has entered into a written contract with a contractor for improvements to real property, or for furnishing labor or materials for such improvements, may file or record a notice of the contract with the registry of deeds, give actual notice to the owner of such recording, and upon the filing or recording shall have a lien on the property or building to secure payment for the labor or materials. Ibid. "The lien is a creature of the statute, and can be enforced only by strict compliance with the statute." Hammill-McCormick Assocs., Inc. v. New England Tel. & Tel. Co., 399 Mass. 541, 543-544 (1987). The statute "is strictly construed against the party claiming the lien." Ng Bros. Constr., Inc. v. Cranney, 436 Mass. 638, 644 (2002). "The primary purpose of the lien is to provide security to contractors, subcontractors, laborers, and suppliers for the value of their services and goods provided for improving the owner's real estate.... At the same time, the statute contains filing and notice requirements to protect the owner and others with an interest in the property." Tremont Tower Condominium, LLC v. George B.H. Macomber Co., 436 Mass. 677, 679 (2002), quoting from Hammill-McCormick Assocs., Inc., supra at 542-543.
General Laws c. 254, § 4, as appearing in St. 1996, c. 364, § 5, limits a mechanic's lien by providing that the lien "shall not exceed the amount due or to become due under the original contract as of the date notice of the filing of the subcontract is given by the subcontractor to the owner." See BloomSouth Flooring Corp. v. Boys' & Girls' Club of Taunton, Inc., 440 Mass. 618, 623-624 (2003). Trillium asserts that the paragraph which follows the above-quoted language, and which was newly added to the statute by the 1996 amendment, provides an exception to this limitation for a lower-tier subcontractor or supplier-i.e., one who "has no direct contractual relationship with the original contractor"-who serves a notice of identification on the general contractor. G. L. c. 254, § 4. Trillium argues that AvalonBay, in managing the project for Avalon Canton, was the general contractor, making Superior the subcontractor, and Trillium the sub-subcontractor. As a lower-tier subcontractor, Trillium claims that it was entitled to the additional protections of the language added in the 1996 amendment, and that the JCA, signed by AvalonBay, Superior, and Trillium, did provide a notice of identification to the general contractor.
We have substantial doubt whether Trillium is a lower-tier subcontractor within the meaning of that paragraph, insofar as AvalonBay appears to have operated as agent on behalf of its wholly-owned subsidiary Avalon Canton rather than as a general contractor, and whether the JCA operates as a notice of identification "in substantially the form" specified in that paragraph. However, we need not resolve either question, as we disagree with Trillium's contention that the language confers greater rights to lower-tier subcontractors than to ordinary subcontractors.
Trillium's argument misinterprets G. L. c. 254, § 4. When read in full, the language of that section provides that both first-tier and lower-tier subcontractors are subject to the general limitation that they may recover on a lien only the "amount due or to become due under the original contract" as of the date when a notice of contract is filed. The 1996 amendment to the statute added an additional limitation on lower-tier subcontractors who fail to serve a timely notice of identification on general contractors, limiting those liens to the amount that remains owed to the first-tier subcontractor by the general contractor as of the date the lower-tier subcontractor files its notice of contract. Nothing in the provision governing those with "no direct contractual relationship with the original contractor" renders the earlier limitation on subcontractors inapplicable to lower-tier subcontractors. In other words, though it is clear that the subsequent paragraph is designed to furnish a mechanism to ensure that lower-tier subcontractors are not placed at a disadvantage in terms of their ability to secure and collect payment for work performed, it does not entitle them to recover more than they could if they performed the same work as first-tier subcontractors.
The sole issue in this appeal is whether there was an amount "due or to become due" from AvalonBay to Superior under the trade contract as of the date Trillium filed its notice of contract. As noted above, on May 8, 2014, Trillium filed a notice of contract and a statement of account in the Norfolk County Registry of Deeds and the following day sent notice of these recordings to Avalon Canton by certified mail. Prior to filing the notice, Trillium submitted lien waivers and partial releases on five separate occasions as part of the payment applications that AvalonBay relied on to issue payments under the terms of the trade contract. These documents certified that Trillium had been fully paid through March 27, 2014, and waived any of Trillium's claims against AvalonBay through that date. It was over one month after Trillium submitted the last lien waiver that it filed the notice of contract, and there were no unpaid invoices free of a waiver sent to AvalonBay in the intervening period. Thus, the motion judge properly dismissed this claim based on the fact that on May 9, 2014, no payment was due or to become due under the original contract.
2. Breach of contract. We also reject Trillium's assertion that the defendants breached the JCA by failing to notify Trillium of insufficient funds remaining in Superior's account to pay Trillium's outstanding invoices within ten days of Trillium's submitting an invoice to AvalonBay. Trillium argues that the electronic mail message (e-mail) sent by its vice president to AvalonBay on April 1, 2014, claiming that Superior owed Trillium $204,669.80, triggered AvalonBay's obligation to provide notice of the insufficiency. The e-mail, however, was sent five days after Trillium sent its last lien waiver and partial release on March 27, 2014. There were no further unpaid invoices free of a waiver sent to AvalonBay that would have alerted it to the fact that there were insufficient funds in Superior's account to honor the invoice. Because this condition precedent in the JCA was not met, AvalonBay's obligation to notify Trillium about the insufficiency was not triggered.[8]
3. Breach of the implied covenant of good faith and fair dealing. We likewise discern no error in the motion judge's dismissal of Trillium's claim that the defendants violated the implied covenant of good faith and fair dealing by failing to notify Trillium that Superior was not adequately performing its work, could not afford to pay Trillium, and that the defendants intended to terminate the trade contract. "Every contract implies good faith and fair dealing between the parties to it," Anthony's Pier Four, Inc. v. HBC Assocs., 411 Mass. 451, 471 (1991) (quotation omitted), meaning that "neither party shall do anything which will have the effect of destroying or injuring the right of the other party to receive the fruits of the contract." Druker v. Roland Wm. Jutras Assocs., Inc., 370 Mass. 383, 385 (1976), quoting from Uproar Co. v. National Bdcst. Co., 81 F.2d 373, 377 (1st Cir.), cert. denied, 298 U.S. 670 (1936).
Here, Trillium did not proffer any evidence to support its allegations that defendants acted in bad faith or engaged in unfair dealing. The JCA contains no provisions requiring the defendants to notify Trillium of performance-related issues with Superior or that it intended to terminate Superior's contract. As stated previously, under the JCA, the defendants were not required to notify Trillium that Superior could not afford to pay Trillium when there was no unpaid invoice sent to AvalonBay after the final lien release was sent. Accordingly, this claim was appropriately dismissed.
Judgment affirmed.

Trillium asserted claims against Superior for a breach of contract (count I), AvalonBay for breach of contract (count II), Superior for quantum meruit (count III), Superior for unjust enrichment (count IV), AvalonBay for unjust enrichment (count V), AvalonBay for breach of the implied covenant of good faith and fair dealing (count VI), Superior for violation of G. L. c. 93A, § 11 (count VII), AvalonBay for violation of G. L. c. 93A, § 11 (count VIII), and to enforce a mechanic's lien under G. L. c. 254, § 4 (count IX). Superior was defaulted on July 30, 2014. Trillium subsequently recovered a separate default judgment against Superior in the amount of $246,564.03, and that judgment has not been appealed. Trillium did not appeal the entry of summary judgment in favor of AvalonBay on Trillium's claims alleging unjust enrichment (count V) or violation of G. L. c. 93A, § 11 (count VIII). The only claims before us in this appeal are against AvalonBay for breach of contract (count II), breach of the covenant of good faith and fair dealing (count VI), and enforcement of a mechanic's lien under G. L. c. 254, § 4 (count IX).

The record contains conflicting evidence of the date on which work was last performed, but the conflict is not material to the issues on appeal.

On July 1, 2014, Trillium recorded an updated statement of account in the Norfolk County Registry of Deeds claiming Superior failed to pay it $248,939.03 out of a total of $343,342.90.

AvalonBay paid the new contractor approximately $247,559, an amount that exceeded what AvalonBay would have paid Superior by $96,357.35 had Superior fully performed its work. Section 30.3 of the trade contract expressly provides that upon termination for default, Superior is liable to AvalonBay for any amounts that AvalonBay pays in excess of the unpaid balance of the contract. On this basis, AvalonBay asserted cross claims against Superior for breach of contract and indemnification for the additional costs and expenses caused by Superior's default. The cross claims were dismissed below and are not before us on appeal.

Trillium's argument that paragraph five of the JCA rendered the release it submitted ineffective unless Trillium had actually received full payment is without merit. Each release signed by Trillium through March 27, 2014, acknowledged receipt of a portion of monies paid to Superior as consideration and then released Trillium's claims against AvalonBay. In any event, the question arising from Trillium's argument under the JCA is not whether the prior lien releases are enforceable, but rather whether the e-mail sent by Trillium's vice president following the final invoice and release triggered some additional or independent obligation to notify Trillium about the insufficient funds. As discussed, it did not.