**In re Cheryl CLINTON, Debtor.**

**Bankruptcy No. 93–75417.**

United States Bankruptcy Court,
N.D. Georgia,
Atlanta Division.

April 11, 1994.

Vernitia A. Shannon, Atlanta, GA, for debtor.

M. Regina Thomas, Atlanta, GA, Trustee.

## DECISION AND ORDER DENYING MOTION TO ADD PARTY

JAMES E. MASSEY, Bankruptcy Judge.

Cheryl Clinton, the Debtor, moves for an order permitting her spouse, Harold Clinton, to be added as an additional debtor on the grounds that Harold Clinton is the primary income producer in Debtor's household, the plan cannot be pursued without his income and the addition of the debtor will not prejudice the claims of creditors or unduly burden the court. The motion refers to exhibits consisting of an amended plan and schedules, which the Debtor seeks to file, and an affidavit of Harold Clinton, whom the Debtor contends has consented to being added as a debtor. Neither a certificate of service nor the exhibits are attached to the motion. The court cannot determine whether creditors have received notice of the motion, although the Chapter 13 Trustee apparently received a copy, since she indicated on a proposed order submitted by the Debtor that she does not oppose the motion.

### Facts

The Debtor filed the Motion to Add Party on March 9, 1994, about four months after commencing this case on November 1, 1993. The captions on the statement of financial affairs and schedules of assets and liabilities filed on November 23, 1993 show the debtor to be Harold Clinton as well as Cheryl Clinton. Both Mr. and Mrs. Clinton executed the schedules, which describe jointly held assets and liabilities jointly owed. For example, Schedule A lists a single family dwelling located at 6620 Ramsgate Way, Norcross, Georgia that is jointly owned and secures a claim of $42,000. Schedule D identifies MLA, Inc. the secured creditor as MLA, Inc. and describes the debt as jointly owed in the amount of $42,000.

On November 24, 1993, Miami Valley Bank filed a proof of claim against Cheryl Clinton and Harold Clinton as debtors in the amount of $41,591.24, secured by property identified as 6620 Ramsgate Way, Norcross, Georgia. Presumably, MLA is either the servicing agent for or predecessor in interest to Miami Valley Bank.

Schedule I shows Mr. Clinton to be the primary debtor with a monthly income and shows Mrs. Clinton as having no income. Schedules E and F reflect only three creditors: the Internal Revenue Service, First Union Bank and Picadilly Place Condo Associates. An amendment to the schedules filed on January 28, 1994, under a style describing the debtors as Mr. and Mrs. Clinton purports to add the same creditors listed in Schedules E and F.

### Discussion

#### A. Case Law.

Section 302(a) of the Bankruptcy Code provides as follows:

A joint case under a chapter of this title is commenced by the filing with the bankruptcy court of a single petition under such chapter by an individual that may be a debtor under such chapter and such individual's spouse. The commencement of a joint case under a chapter of this title constitutes an order for relief under such chapter.

Nothing in section 302 suggests that a debtor may amend a petition to add a spouse as a debtor and thereby retroactively commence a case for that spouse. For that reason it is not surprising that in every reported case dealing with such an amendment, the motion to amend was denied. *In re Sobin,* 99 B.R. 483 (Bankr.M.D.Fla.1989); *In re Kirkus,* 97 B.R. 675 (Bankr.N.D.Ga.1987); *In re Woodell,* 96 B.R. 614 (Bankr.E.D.Va.1988); *In re Masterson,* 55 B.R. 648 (Bankr.W.D.Pa.1985) (dictum); *In re Austin,* 46 B.R. 358 (Bankr. E.D.Wisc.1985).

The debtor and his spouse in *In re Austin,* like the debtor and spouse here, filed schedules as if the original petition had been a joint petition. The *Austin* court focused on the critical importance of the date and time of the filing of a bankruptcy petition with respect to the rights of debtors and creditors. Stating that the accuracy in the caption of the petition is a matter of substantive importance and not merely form, the court concluded that "[t]he critical import of the filing of a bankruptcy petition and its effect on the rights of others will not permit a bankruptcy petition such as filed in this case to be treat-

ed, two weeks after the fact, as a joint petition." 46 B.R. at 360.

In *In re Masterson,* the court looked to the wording of section 302:

> The plain language of this section indicates that a joint case may only involve a "single petition". John P. Masterson has already filed his petition and there is no apparent procedural device by which an additional party can be made a debtor under that single petition.

55 B.R. at 649. The court rested its denial of the motion to amend, however, on the ground that the original debtor did not consent to the amendment.

In *In re Woodell,* the chapter 13 debtor moved to amend the petition to add his spouse as a petitioner. In denying the motion, the court stated:

> The filing date of a bankruptcy petition is of fundamental importance to the case since under various Code provisions a number of rights, obligations and deadlines are determined by that filing date....
>
> The granting of a motion to add a spouse to the individual filed spouse's petition by amendment raises serious questions related to the filing date as to the added spouse. These questions are avoided by requiring the spouse to file a separate petition as appears to be contemplated by Sections 301 and 302. In the appropriate situation the two cases can then be consolidated for joint administration upon the debtors' request.

96 B.R. at 615.

The court in *In re Sobin* relied on *Austin, Masterson* and *Woodell* in concluding that the statute does not permit the amendment of a petition to add a spouse.

Three years after an initial chapter 13 filing and more than two weeks after conversion of the case to a chapter 7 case, the debtor in *In re Kirkus* filed a motion to amend the chapter 7 petition to add the debtor's spouse. The possible adverse effect of the delay on the rights of creditors convinced the court to deny the motion to amend. Nonetheless, the court did not close the door on all such amendments:

> ... [T]here may be some instances when a joinder by a spouse may be desirable and helpful. The court concludes that any such determination should be made on a case-by-case basis giving consideration to the protection and best interests of creditors and debtors of the separate estates.

97 B.R. at 675.

These cases reflect two primary concerns about an amendment to add a spouse as a debtor: first, the effect on creditors and second, the absence of clear authority to permit such an amendment. In all of the cases except *Kirkus,* the courts focused more on the general possibility of prejudice to creditors, than on perceived harm to the actual creditors of the debtors in those cases. The view that section 302 does not authorize amendments to add a spouse as a debtor has not been examined in depth. Aside from the *Masterson* court's conclusion that no procedural device apparently exists to permit an amendment, the only legal analysis undertaken was the statement of the court in *Sobin* that "[s]ection 302(a) prescribes the only manner in which a joint petition may be commenced, i.e. both spouses must file the petition concurrently." 99 B.R. at 483. Neither the word "concurrent" nor any synonym appears in section 302, however.

## B. *Prejudice To Creditors.*

The possibility of prejudice to creditors obviously exists. The caption of a petition tells creditors who the debtor is and isn't, thereby imparting to creditors critical information on which they may choose to act or not to act. Adding a spouse as a debtor may in some cases result in delay and confusion, particularly if a significant amount of time has passed from the initial filing. Adding the spouse as a debtor could adversely affect a creditor's strategy to collect the debt. Entities extending credit to a non-debtor might have a different attitude if they knew the leopard could change his spots. In other cases, however, adding a spouse as a debtor might help creditors, rather than harm them.

If there were ever a case in which prejudice to creditors is of virtually no concern, this case is likely to be it. The primary creditor has actually filed a claim in the name

of both debtors. The case seems routine in every respect, and whatever concerns might otherwise exist could be easily raised and aired by requiring the Debtor to give notice of the motion to creditors and by giving them an opportunity to be heard on the motion. The Chapter 13 trustee has already indicated no opposition to the requested relief.

The alternative course of action available to the Debtors is the filing by Mr. Clinton of a second case. That course would not only involve additional work for the Clintons' lawyer, but also it would require additional expense by the office of the Chapter 13 Trustee and the Clerk's office not likely at all to be recouped by the filing fee or other administrative charges. In short, if creditors received notice of the motion, had an opportunity to be heard and voiced no objection, permitting the amendment makes sense in this case. Administrative convenience and the absence of prejudice to creditors are not relevant, however, if the court has no power to permit the Debtor to amend the petition to add her spouse as a debtor.

### C. *Rule 1009(a).*

The objection that there is no procedural device to effect an amendment adding a debtor could be satisfied by reading Rule 1009(a) of the Federal Rules of Bankruptcy Procedure with a modest amount of imagination. Fed.R.Bankr.P. 1009(a) provides as follows:

> (a) GENERAL RIGHT TO AMEND. A voluntary petition, list, schedule, or statement may be amended by the debtor as a matter of course at any time before the case is closed. The debtor shall give notice of the amendment to the trustee and to any entity affected thereby. On motion of a party in interest, after notice and a hearing, the court may order any voluntary petition, list, schedule or statement to be amended and the clerk shall give notice of the amendment to entities designated by the court.

Although there are many decisions citing this rule in connection with amendments of schedules, the court could find no reported case dealing with the amendment of a petition. As to petitions it seems likely that the drafters of this rule intended to facilitate corrections of clerical errors and to permit amendments of allegations of jurisdictional facts supporting voluntary or involuntary petitions. No one would seriously argue that the rule would permit an amendment to substitute a new and different debtor. The identity of the debtor and the debtor's estate obviously cannot be a moving target that leaves trustees and creditors guessing whether an amendment may retroactively invoke the automatic stay to protect a totally different entity than the one identified in the original petition. If the Bankruptcy Code permits the addition of a spouse as a debtor, however, this rule is broad enough to supply the procedural means to do so.

The Debtor here seeks not to substitute Mr. Clinton as the debtor but to add him as an additional debtor. The Clintons might well argue that Fed.R.Bankr.P. 1009(a) should be interpreted broadly to permit an amendment to add Mr. Clinton, where no prejudice to creditors is present. Indeed, the secured creditor might itself prefer the amendment because it would speed the case to resolution and thereby start the process of curing pre-petition defaults on the loan.

### D. *Analysis of the Issue.*

The filing of a petition under section 302 of the Bankruptcy Code commences a "joint case" under one filing number for one filing fee. The petition filed by Mrs. Clinton was not a joint petition. It was merely a section 301 voluntary petition. Section 301 is similar to section 302 but deals with the commencement of voluntary cases filed by a single entity:

> A voluntary case under a chapter of this title is commenced by the filing with the bankruptcy court of a petition under such chapter by an entity that may be a debtor under such chapter. The commencement of a voluntary case under such chapter of this title constitutes an order for relief under such chapter.

Thus, the issue is whether a debtor can in effect retroactively file a bankruptcy petition for the debtor's spouse by amending a section 301 voluntary petition. Or, more precisely, can a debtor file a section 301 petition and then be a party to a joint petition in the

same case? There are two choices: (1) interpret section 302 as permitting the "single petition" to include an amendment that adds the spouse, perhaps relying on the broad wording of Fed.R.Bankr.P. 1009(a), or (2) interpret sections 301 and 302 as forbidding the transformation of a section 301 petition into a section 302 petition.

This court chooses the second construction. It is not only more consistent with the concepts expressed in sections 301 and 302 and the court's interpretation of the limited purpose of Fed.R.Bankr.P. 1009(a) as it applies to amendments of petitions, but also that reading conserves judicial resources without denying substantive relief to the spouse.

Mrs. Clinton filed her petition under section 301. Hers was the only estate created and that filing constituted an order for relief as of the date of the filing. The term "order for relief" is not defined in the Bankruptcy Code. The term is explained in the *Collier* treatise as follows:

> Under the Bankruptcy Act an adjudication in bankruptcy was a judgment *in rem,* a determination of the debtor's status as a bankrupt, binding upon all parties in interest, whether or not they appeared in the proceedings for an adjudication. Although section 301 of the Code substitutes "order for relief" in place of "adjudication," the order for relief has the same far reaching effect.

2 *Collier on Bankruptcy,* ¶ 301.08, p. 301–14 (15th ed. 1993). The order for relief and the commencement of the case, though related in voluntary cases, are not the same thing. Commencement of a voluntary case constitutes the order for relief. By contrast, in an involuntary case, the court physically enters an order granting the relief of adjudication of an entity as a debtor, where the necessary factual elements are proved. 11 U.S.C. § 303(h). It is the filing of a petition that invokes the automatic stay under section 362 and it is the "commencement of the case" that creates the estate under section 541. One of the direct effects of an order for relief is that it sets a possible limit of time within which a trustee may perform certain acts, such as filing a complaint on a claim held by the debtor. 11 U.S.C. § 108. It is axiomatic

that in a case there can be only one order for relief and only one date of commencement of the case. Otherwise, the boundaries of the estate could not be precisely defined and the trustee could not be sure when a statute of limitation might run.

In a joint case, there are in fact two separate estates created. This is made clear by section 302(b), which states that the court shall determine "the extent, if any, to which the debtors' estates shall be consolidated." A joint case cannot exist before both parties have filed a "single petition." Assuming that an amendment to the original petition, together with the original petition, constituted the single petition required by section 302, the filing of the amendment would commence a joint case on the date that the amendment was filed. The joint case cannot be deemed to have commenced on November 1, 1993, the date of Mrs. Clinton's filing, because it is the actual entry of a filing of some paper that is the operative event. This is best illustrated by reference to section 102(6) where the drafters of the Code stated as a rule of interpretation that " 'order for relief' means entry of an order for relief." This rule of construction is not as nonsensical as it might first appear. The legislative history explains:

> If the court orally orders relief, but the order is not entered until a later time, then any time measurements in the bill are from entry, not from the oral order. In a voluntary case, the entry of the order for relief is the filing of the petition commencing the voluntary case.

H.Rept. No. 95–595, 95th Cong., 2nd Sess., p. 315 (1977), U.S.Code Cong. & Admin.News 1978, pp. 5787, 6272. Congress clearly intended that a docket entry of the filing of a pleading or order mark the time at which an order for relief is entered. For that reason, the time mark for the spouse can be no earlier than the date the amendment is filed. The original petition cannot be the mark for the spouse because it does not mention the spouse. If an oral order granting an involuntary petition is too faint an echo to constitute an order for relief, the filing of an original petition of a debtor, utterly silent about the

status of a spouse, cannot constitute the entry of an order for relief for the spouse.

It should therefore be clear that the problem with amending her section 301 petition to add her spouse has not so much to do with the authority to file the amendment as it does with the fact that Mrs. Clinton already has an estate and already has an order for relief. The "single petition" that would commence the joint case and create Mr. Clinton's estate has the unavoidable consequence of giving Mrs. Clinton a second commencement date and a second order for relief. As explained above, she cannot have two such dates and two such orders. There is only one to a customer per case.[1] Therefore, Mr. Clinton may not be added by amendment as a debtor.

█ Though permitting an amendment might be economical for the Debtor, her spouse and creditors in this case, it would create a wasteful allocation of scarce judicial resources. To permit one retroactive filing is to invite another and another. Each such filing would require a detailed analysis, as the court has done here, to determine whether the amendment would harm creditors. The costs associated with determining whether creditors are prejudiced far outweigh the meager cost savings an amendment would provide, particularly where the spouse has the alternative of filing a second petition and moving for administrative or substantive consolidation. For these reasons, it is

ORDERED and ADJUDGED that the Debtor's Motion To Add a Party is DENIED.

---

**1.** A debtor can have different commencement dates and orders for relief if the debtor has two different cases pending at the same time. Fed. R.Bankr.P. 1015(a) permits the court to consolidate such cases.