Merrick, J.
This is an action to recover for engineering and surveying services provided to defendant John H. Anderson (“the Architect”) by plaintiff Stamski and McNary, Inc. (“the Engineer”) pursuant to a written contract. The trial court allowed the Engineer’s Mass. R. Civ. P., Rule 56 motion for summary judgment, and the Architect filed this Dist./Mun. Cts. R. A. D. A., Rule 8C appeal. The sole defense raised by the Architect is that he entered into the contract on behalf of a disclosed principal and is, therefore, not personally liable.
The contract was prepared by the Engineer on a Massachusetts Association of Land Surveyors and Civil Engineers, Inc. printed standard form which designates the parties as the “Surveyor/Engineer” and the “Client.” To identify the Client, the words “John H. Anderson” and “Architect” were typed on printed lines calling for the name and title of the Client, which were followed by the printed language: “HEREINAFTER REFERRED TO AS CLIENT.”
In the space designated on the standard form contract for the “OWNER OF LAND AND LOCATION” is the typed entry “Ruggiero; Quarry Road and Ledge Rock Way, Acton, Massachusetts.” The “documents to be furnished” were listed by the parties as: “Plans, documents, computations as required by the Town of Action.” As to “COLLECTION,” the contract provides: ‘The Client agrees to pay all costs of collection including reasonable attorney’s fees.” Finally, the contract states that “[tjhis Agreement may be amended only in writing signed by the Client and the Surveyor/Engineer.” The contract was signed in February, 1989 by “John H. Anderson” for “J. H. Anderson Architect.”
The Architect gave his own check to the Engineer for the $1,000.00 retainer called for by the contract. Even before the contract was signed, the Engineer billed $548.10 to the Architect for soil tests and property line research. The Architect paid that bill with his own check. The remainder of the work by the Engineer related to the project, including the preparation of site plans, septic plans and revisions, was also billed to the Architect. All payments were again made by the Architect on his own checks to the Engineer.
The payments, unfortunately, were considerably less than the bills. This resulted not from any claimed problem with the work or the charges, but from the fact that the owner of the property, who had retained the Architect, had defaulted on his obligation. The Architect brought suit against the owner to recover money due for his own work, the Engineer’s work and the work of others. The Engineer declined to participate in that action on the ground that he had not contracted with the owner.[2] A partial recovery was *200 made in the action against the owner, which the Architect apportioned among himself, the Engineer and others.
In its affidavit in support of its motion for summary judgment in this suit, the Engineer attached a copy of the contract, and recited both its performance thereunder and the Architect’s failure to pay. The Engineer further averred that in reliance upon the contract, it performed its services for the Architect and no one else; and that, prior to his non-payment, the Architect had never stated that the Engineer must look elsewhere for payment.
In some circumstances, an architect can be an agent for the owner in entering into a contract by which the owner will be bound. See, for example, Kaufman v. Leard, 356 Mass. 163, 172 (1969). In the present case, no evidence was presented as to any authority of the Architect to execute a contract with the Engineer on the owner’s behalf. The terms of the Architect’s contract with the owner were not" before the court, contrast Hathaway v. Stone, 215 Mass. 212, 214-216 (1913), nor was there any evidence of any statements or conduct by the owner suggesting such authority. Contrast H. H. Hawkins & Sons Co. v. Robie, 338 Mass. 61, 66-67 (1958). While an architect could have such contract authority as in Kaufman v. Leard, supra, an architect could instead be acting as a general contractor in performing architectural work, subcontracting a portion of that work out to the Engineer. In the latter event, the owner would not be liable to the Engineer. Evans v. Multicon Constr. Corp., 30 Mass. App. Ct. 728, 740 (1991).
Even assuming that the Architect actually had the authority to enter into contracts binding on the owner, nothing in the record contradicts the plain language and import of the contract itself that the Architect was the Engineer’s “client” and expressly obligated to make payment for the Engineer’s services. Moreover, the Architect’s counter-affidavit fails to raise a genuine issue of material fact as to whether the Architect was acting as the agent of a disclosed principal when he entered into the contract. The counter-affidavit recites only that the Architect was performing architectural services for the owner and that this was disclosed to the Engineer. The mere fact that the Architect had been hired by the owner fell well short of raising a factual issue as to whether the Architect and Engineer executed a specific contract binding on the owner as a disclosed principal. See, e.g., Harold L. Baker Co. v. Meledones, 352 Mass. 485, 486-487 (1967); Morgan v. Burlington, 316 Mass. 413, 420 (1944).
The authority of an agent to bind a principal in a particular matter becomes a question of fact only when some evidence is introduced either of an express appointment by the principal with a delegation to the agent of specific duties or authority, or of conduct by the principal warranting an inference that the agent is acting on behalf, and with the knowledge and consent, of the principal. Cowan v. Eastern Racing Association, 330 Mass. 135, 142 (1953). No such evidence was presented herein. As noted, the contract itself was not even entered into in the name of the owner, Atlantic Salmon A/S v. Curran, 32 Mass. App. Ct. 488, 493 (1992), but was instead executed by the Architect in his own name as the responsible party. The terms “architect” and “agent” are not, as the Architect seems to assume, synonymous.
The record includes the Architect’s answers to interrogatories[3] to which he appended a blank American Institute of Architects (“AIA”) standard form contract between an architect and consultant. The standard form provides that the consultant shall be paid only in proportion to payments received by the architect from the owner. That document, *201 however, only highlights the absence of any such provision in the contract between the parties herein.
Summary judgment for the plaintiff is affirmed. The defendant’s appeal is dismissed.
So ordered.

 Because of our decision in this case, we need not consider whether the Architect’s suit against the owner claiming to be entitled to the money due for the Engineer’s services raises an issue of judicial estoppel. See East Cambridge Sav. Bank v. Wheeler, 422 Mass. 621, 623-624 (1966).

 The Architect’s answers to interrogatories assert, inter alia, that “after about seventy-five (75%) percent of the work had been billed, he warned the Engineer that he had not received reimbursement from the owner. [Architect] further suggested that [Engineer] wait until payment was received before proceeding with further work. [Engineer] indicated he was confident the owner would pay and that he did not wish to interrupt the project flow. [Architect] told [Engineer] he was going out on a limb and that it was his risk he [sic] wished to continue without payment.” No issue concerning the assessment of damages, including whether work performed at the end of the contract was governed by the same terms, has been briefed or otherwise raised before us or, as far as the record shows, the trial judge.