Brick Construction Corporation *vs.* CEI Development Corp.[1] & others.[2]

No. 97-P-1337.

Middlesex. December 11, 1998. - May 26, 1999.

Present: Kass, Dreben, & Spina, JJ.

*Lien. Bankruptcy,* Order for relief. *Contract,* Construction contract, Subcontract. *Practice, Civil,* Discovery, Waiver. *Limitations, Statute of.*

An action under G. L. c. 254, § 31, brought in 1996 by a subcontractor to enforce a lien, was not brought within "one year after the adjudication of bankruptcy" of the general contractor, where the contractor filed a voluntary petition in the Bankruptcy Court in 1993 and the commencement of a voluntary case constituted, under 11 U.S.C. § 301 (1994), an automatic entry of an "order for relief," the effect of which was the same as an adjudication. [838-839]

Summary judgment was properly entered in favor of the owners of property and against the plaintiff subcontractor, where the subcontractor failed to set forth specific facts showing there was a genuine issue for trial. [839-841]

Civil action commenced in the Superior Court Department on July 22, 1996.

The case was heard by *Hiller B. Zobel,* J., on motions for summary judgment.

*David M. Hass* for the plaintiff.

*Ralph Carabetta* for the defendants.

Dreben, J. After succeeding in arbitration, the plaintiff-subcontractor, Brick Construction Corporation (Brick), obtained a judgment against the general contractor, Carabetta Builders, Inc. (Carabetta). While its appeal was pending in this court, Carabetta filed for bankruptcy in 1993. Unable to obtain pay-

---

[1]As the general partner of both Pleasant Plaza Limited Partnership and Pleasant Plaza Housing Limited Partnership.

[2]Insurance Company of North America and Cornerstone Corporation. The plaintiff's brief states that the Insurance Company of North America "is not a party to this appeal."

ment from Carabetta, Brick sought by this action to recover from four entities[3] that either owned or managed the building on which Brick had performed work. On the basis that the plaintiff's action was untimely, the defendants' motions for summary judgment were allowed; the plaintiff's motion for reconsideration was denied, and this appeal followed. We affirm.

1. *Claim under G. L. c. 254, § 31.* Brick contends that it has a lien under G. L. c. 254, § 31, as appearing in St. 1973, c. 1114, § 25, against sums due from the defendants to Carabetta. Section 31 permits, in certain situations, a subcontractor whose general contractor is "adjudged" a bankrupt to have a lien on sums owed the general contractor by the person contracting for the work. The statute, however, provides:

> "Proceedings to enforce a lien secured under this section shall be by a civil action in the superior court within one year after the adjudication of bankruptcy [of the general contractor]."

Brick argues that the term "adjudication of bankruptcy" means an adjudication by a court and that the mere filing of a voluntary petition by Carabetta was not such an adjudication. This argument fails to distinguish between voluntary and involuntary filings. Section 301 of the Bankruptcy Act, 11 U.S.C. § 301 (1994), provides:

> "A voluntary case under a chapter of this title is commenced by the filing with the bankruptcy court of a petition under such chapter by an entity that may be a debtor under such chapter. The commencement of a voluntary case under a chapter of this title constitutes an order for relief under such chapter."

The history of the section, explained in the Senate Report accompanying the 1978 Act, indicates that the term "order of relief" is the equivalent of "adjudication." As stated in S. Rep. No. 989, 95th Cong., 2d Sess. 31 (1978), reprinted in 1978 U.S. C.C.A.N. 5187: "The filing of the petition constitutes an order of relief under [§ 301]. The section contains no change from

---

[3]According to the defendants' brief, the limited partnerships own the property and improvements thereon, and Cornerstone Corporation manages the complex. For purposes of this appeal, it is unnecessary to treat any of these defendants separately.

current law, except for the use of the phrase 'order for relief' instead of 'adjudication.' "

Under the prior act, the filing of a voluntary petition operated as an automatic adjudication with the same effect as a decree of adjudication. See *In re Greetis*, 98 B.R. 509, 512 (Bankr. S.D. Cal. 1989). Likewise, under the change inserted by the 1978 Act, the filing of a voluntary petition constitutes an automatic entry of an "order for relief," the effect of which is the same as an "adjudication." See *ibid.*; *In re Clinton*, 166 B.R. 195 (Bankr. N.D. Ga. 1994). See also *Canton Lumber & Supplies, Inc.* v. *MacNevin*, 354 Mass. 563, 564 (1968); *Buker* v. *National Mgmt. Corp.*, 16 Mass. App. Ct. 36, 39-41 (1983).

The Massachusetts lien statute at issue, G. L. c. 254, § 31, was last amended in 1973, prior to the 1978 change in language of the Bankruptcy Act. The term "adjudication" referred to therein thus meant, in the case of a voluntary petition, the commencement of the case by filing. The change in wording of the Federal law, which does not affect the rights of the parties, see 2 Collier, Bankruptcy § 301.07 (1998), also does not effect a change in the application of § 31.

Since Carabetta's voluntary petition was filed in 1993, Brick's action, commenced on July 22, 1996, was untimely, and summary judgment on this claim was properly allowed.

2. *Other claims.* Brick argues that its contract with Carabetta permits it to enforce Carabetta's rights against the owner (defendants). Referring to art. 11.1, "Rights and Responsibilities," of its subcontract, AIA document A401, 1978 edition, published by the American Institute of Architects, Brick claims it has "the benefit of all rights, remedies and redress against the Contractor which the Contractor [to the extent that provisions of the Contract Documents between the Owner and Contractor apply to the Work of the Subcontractor] has against the Owner . . . ."

Brick's subcontract is identical to that of the subcontractor in *Fall River Hous. Authy.* v. *H.V. Collins Co.*, 414 Mass. 10 (1992).[4] In that case, the court determined that there was no privity between the subcontractor and the owner. *Id.* at 15. As stated in *Evans* v. *Multicon Constr. Corp.*, 30 Mass. App. Ct.

---

[4]The record in the *Fall River* case contains the subcontract. We may take judicial notice of the record of a case. *Nantucket Conservation Foundation, Inc.* v. *Russell Mgmt., Inc.*, 2 Mass. App. Ct. 868, 868-869 (1974). *O'Neill* v. *Mencher*, 21 Mass. App. Ct. 610, 613 (1986).

728, 740 (1991), "In the absence of a lien perfected under G. L. 254, an owner who enters into a general contract for improvements on real property is not ordinarily liable to subcontractors whose sole contractual arrangements are with the general contractor." See *Superior Glass Co.* v. *First Bristol County Natl. Bank*, 8 Mass. App. Ct. 356, 359 (1979), *S.C.*, 380 Mass. 829 (1980). Brick has set forth no specific facts which relieve it from the ordinary rule. Its attempts to recover under an unjust enrichment theory or as a third-party beneficiary also fail under the reasoning of *Evans, supra.*

Brick suggests that the failure of the defendants to put the entire prime contract in the record somehow strengthens both its claim that it has a direct right against them as owners and its claim that it is a third-party beneficiary of the contract between the defendants and Carabetta. Based on the foregoing cases, the defendants have shown that Brick has no reasonable expectation of proving its claims. It was again incumbent on Brick to set forth specific facts showing there is a genuine issue for trial. See *Wheatley* v. *American Tel. & Tel. Co.*, 418 Mass. 394, 397 (1994). To the extent that Brick claimed before the motion judge (and also on appeal) that there are material issues of fact which could not be determined because discovery was incomplete (this argument also applies to Brick's unjust enrichment claim and to its argument that the corporate veil of the defendants should be pierced[5]), Brick's failure to file an affidavit under Mass.R.Civ.P. 56(f), 365 Mass. 825 (1974), averring that " 'for reasons stated [it could not] present by affidavit facts essential to justify its opposition' . . . is fatal to [its] argument." *First Natl. Bank* v. *Slade*, 379 Mass. 243, 244-245 (1979). "By failing to invoke Mass.R.Civ.P. 56(f), 365 Mass. 825 (1974), in response to the [defendants'] motion for summary judgment, [Brick] waived [its] right to further discovery before a decision was rendered on the summary judgment motion." *Alake* v. *Boston*, 40 Mass. App. Ct. 610, 611 n.3 (1996).

The allowance of the motion for summary judgment on the majority of Brick's claims was also correct by reason of the ap-

---

[5]Here again, *Evans* v. *Multicon Constr. Corp.*, 30 Mass. App. Ct. at 732, quoting from *My Bread Baking Co.* v. *Cumberland Farms, Inc.*, 353 Mass. 614, 620 (1968), is apposite: "In 'rare particular situations to prevent gross inequity,' disregard of separate corporate entities may be warranted, i.e., it is permissible to pierce the corporate veil." Brick has not presented any specific facts suggesting such a "rare particular situation."

plicable statutes of limitation. The contract claims (including the third-party beneficiary claim) are barred by G. L. c. 260, § 2, the six-year statute of limitations. The breach alleged by Brick occurred prior to the first arbitration hearing on May 15, 1990. Similarly, the alleged violations of G. L. c. 93A occurred either at the time the subcontract was executed or when Brick sought payment. Thus, the four-year statute of limitations set forth in c. 260, § 5A, precludes the c. 93A claim.

For the foregoing reasons, there was no error in the allowance of the defendants' motions for summary judgment.

*Judgment affirmed.*

*Order denying motion for reconsideration affirmed.*