Williams, J.
The defendants, Marcos Sastre (“Sastre”), Rosa M. Sastre, and Rosa M. Sastre, trustee of Tiara 34C Realty Trust (‘Trust”), appeal pursuant to Dist./Mun. Cts. R. A. D. A., Rule 8C, the trial judge’s denial of their motion for involuntary dismissal and his subsequent finding in favor of the plaintiff, Rosano-Davis, Inc. (“Rosano-Davis”), on a quantum-meruit theory. The issue is whether the landowner Trust on the facts here may properly be held liable for paying the bills of the subcontractor Rosano-Davis when the general contractor had not fully done so. For the reasons set out below, we find it may not, and we therefore reverse, and order the entry of judgment in favor of all defendants.[2]
In November 1997, the Trust entered into a written contract with Christopher McKenna (“McKenna”) to act as general contractor for the construction of a house on the Trust’s property in Hingham. McKenna would submit certificates to Simon Tempest (‘Tempest”), the Trust’s architect, for payment for completed work. Upon approving a certificate, Tempest would present an invoice to the Trust to pay McKenna. The Trust made four payments to McKenna.
The Trust contracted separately with McKenna for site work. McKenna orally subcontracted that work to Rosano-Davis. The Trust did not participate in arranging that subcontract, and in fact Sastre did not know who that site-work subcontractor would be. Pursuant to its subcontract, Rosano-Davis worked between January and August 1998, and submitted invoices to McKenna for his payment. Rosano-Davis submitted no invoices to the Trust.[3] McKenna made six payments to Rosano-Davis between March and June 1998, but in August Rosano- *56 Davis notified McKenna it would cease work until a claimed outstanding balance was paid.
As a result of McKenna’s non-performance, the Trust terminated its contract with him in November 1998. About that time Tempest advised Brian Davis (“Davis”), the principal of Rosano-Davis, of McKenna’s termination. Tempest also said Sastre was satisfied with the work Rosano-Davis had done, wanted it to continue work on the site, and that Sastre wanted to “clean up” or “square up” some outstanding bills. Davis, Tempest, and Sastre met in November 1998, and Davis was asked about performing further work at the site. Davis then said he wanted payment. Sastre immediately replied he had already paid McKenna and that Davis’s “beef’ was with McKenna. Davis said he thought one of the reasons he was called to the meeting was because Sastre wanted to “square up” with him. Sas-tre pointed out that he had not said that, that his contract was with McKenna, who had Rosano-Davis’s money. Sastre offered to pay Rosano-Davis to complete the job, but no such agreement was reached.
Rosano-Davis perfected no mechanic’s lien as to the project site pursuant to M.G.L.c. 254, §1 et seq. Its complaint asserted two counts: breach of contract, and “implied contract,” or quantum meruit. The trial judge found that Rosano-Davis was entitled to recover $14,782.50, presumably under a quantum-meruit theory,[4] because the Trust, as evidenced by Tempest’s statement to Davis that Sastre wanted to “square up,” had accepted Rosano-Davis’s services with the expectation of compensating Rosano-Davis and that Rosano-Davis expected the Trust to pay it for those services.
Outside the context of a lien against its property perfected under the mechanic’s lien statute, M.G.L.c. 254, §1 et seq., a property owner such as the Trust that enters into a general contract for improvements on real property “is not ordinarily liable” to subcontractors such as Rosano-Davis whose sole contractual arrangements are with the general contractor — here, McKenna. Evans v. Multicon Constr. Corp., 30 Mass. App. Ct. 728, 740 (1991); see also, e.g., Brick Constr. Corp. v. CEI Dev. Corp., 46 Mass. App. Ct. 837 (1999); Superior Glass Co. v. First Bristol County Nat’l Bank, 8 Mass. App. Ct. 356, 359 (1979); Stamski and McNary, Inc. v. Anderson, 1996 Mass. App. Div. 199. The insulation afforded such owners as the Trust extends to the very claim asserted here, that of “unjust enrichment.” Brick Constr., 46 Mass. App. Ct. at 840. Allowing a subcontractor to recover damages in a quasi-contract action against a property owner with whom that subcontractor was not in contractual privity would in essence eliminate the reason the long-lived mechanic’s lien statute exists, and would render its strictly-construed provisions superfluous in their entirety. The statute exists to provide security to subcontractors and others for the value of their goods and services provided to improve the owner’s real property, and it affords the protections it does likely because of the long-standing bar preventing a subcontractor’s recovery against a landowner when the general contractor fails to pay the subcontractor. See, e.g., Tremont Tower Condo., LLC v. George B.H. Macomber Co., 436 Mass. 677, 679 (2002), citing Hammill-McCormick Assocs., Inc. v. New England Tel. & Tel. Co., 399 Mass. 541, 542-43 (1987); see also LaChance v. Rigoli, 325 Mass. 425, 427 (1950), citing, inter alia, Farquhar v. Brown, 132 Mass. 340 (1882); see generally Comment, Mechanic’s Lien Law: More Clarity from the Supreme Judicial Court, 88 Mass. Law Rev. 107, 109 (2003).
One might argue that Evans’s “not-ordmarily-Ymhle” language suggests that special circumstances might allow an unsatisfied subcontractor’s common-law recovery against a property owner whose property that subcontractor has enhanced. *57 The only such circumstance Evans “imaginejdj,” however, was “an unusual construction contract under which the owner agreed to pay to subcontractors all claims in connection with the owner’s job against the contractor which were reduced to judgment” Evans, 30 Mass. App. Ct. at 740. There was no such contract in Evans, id., or here. This Court has found no case positing any other situation that would allow a subcontractor’s quasi-contract recovery against a property owner with whom that subcontractor was not in privity.
Even if the plain holdings of the Evans/Brick Construction line of cases were set aside, however, and such a claim as Rosano-Davis’s here were theoretically permissible, applying a quantum-meruit analysis in this case would lead to the same result. Our courts treat the theories of quantum meruit, quasi contract, and implied contract similarly. See, e.g., Cantell v. Hill Holliday Connors Cosmopoulos, Inc., 55 Mass. App. Ct. 550, 554 n.6 (2002), and authorities cited. Such theories of recovery are grounded in the notion of one party’s having been unjustly enriched to the unjust detriment of the other. See, e.g., Salamon v. Terra, 394 Mass. 857, 859 (1985) (citations omitted); see also, e.g., LaChance, 325 Mass. at 427.[5] “Unjust enrichment, as a basis for restitution, requires more than benefit. The benefit must be unjust, a quality that turns on the reasonable expectations of the parties.” Community Builders, Inc. v. Indian Motocycle Assocs., Inc., 44 Mass. App. Ct. 537, 560 (1998).
Here, there was insufficient evidence to conclude that Rosano-Davis expected the Trust to pay it for the work it would do pursuant to its agreement with McK-enna or that the Trust expected to pay Rosano-Davis for that work. The only evidence purporting to indicate any such “expectation” arose when Tempest told Davis after Rosano-Davis — and McKenna — had left the job that Sastre wanted to “square up.” There is, though, no evidence at all that Rosano-Davis expected payment from anyone but McKenna at the time it performed the work. Rosano-Davis presented no bills to the Trust, and there is no evidence it ever even requested payment from it.
As to considering Tempest’s statement as revealing the Trust’s expectation of paying Rosano-Davis, even were that statement construed as one intending to bind the Trust to pay Rosano-Davis, Tempest’s authority in that regard was not established by any evidence.[6] See Harold L. Baker Co. v. Meledones, 352 Mass. 485, 487 (1967); Stamski and McNary, 1996 Mass. App. Div. at 200; cf. Kaufman v. Leard, *58 356 Mass. 163, 167-68 (1969). And even had Tempest’s authority to bind the Trust been demonstrated, viewed most liberally, the statement could only refer to satisfaction of an outstanding balance for Rosano-Davis’s past performance. It is insufficient as a matter of law to serve as the basis for finding, as the trial court did, that the Trust had accepted Rosano-Davis’s services before or while it rendered them with the expectation of compensating Rosano-Davis. Thus, there was insufficient evidence to demonstrate Tempest’s authority to bind the Trust with his statement, the statement was imprecise in any event, and it was untimely, since it came months after Rosano-Davis ceased work on the site. It cannot properly establish an express or implied promise by the Trust to pay Rosano-Davis. See, e.g., SED Assocs., 1994 Mass. App. Div. at 36. “[C]hagrin, disappointment, vexation, or supposed ingratitude cannot be used as a subsequent basis for a claim for compensation where none was originally intended or expected.” Salamon, 394 Mass. at 862 (further citation omitted).
Further, any notion engendered by Tempest’s comment that the Trust was stepping up to pay Rosano-Davis vanished at the November 1998 meeting itself. In response to Davis’s query about getting paid, Sastre immediately and unequivocally made clear to Davis he would not pay Rosano-Davis for work already done, that he had contracted with McKenna and paid him, and that Davis’s “beef’ was with McKenna and not Sastre.
The Trust’s motion for an involuntary dismissal pursuant to Mass. R. Civ. P., Rule 41 (b) (2) should have been allowed. A trial court facing a Rule 41 motion may take either one of two approaches to it. The court may resolve all evidential conflicts in the plaintiff’s favor and treat the motion as it would a motion for directed verdict, or it may weigh the evidence wholly in its capacity as a fact finder. See, e.g., Fishman v. Paramount Cleaners & Dyers of Brockton, Inc., 2003 Mass. App. Div. 33, 34 and cases cited. Under either approach Rosano-Davis was not entitled to recover. The claim by the subcontractor Rosano-Davis against the Trust was not cognizable under such decisional law as Evans and Brick Construction. Even had the claim been a viable one, the evidence of Tempest’s remark was an insufficient basis on which to conclude that the Trust was unjustly enriched to the unjust detriment of Rosano-Davis’s reasonable expectations. See, e.g., Community Builders, 44 Mass. App. Ct. at 560 and cases cited. Thus, even had the Rule 41 motion been properly denied, we would have to hold that the trial judge’s findings on this point were so lacking in support as to be clearly erroneous. See, e.g., Hayes v. Amica Mut. Ins. Co., 2003 Mass. App. Div. 133, 134.
Judgment reversed, and judgment to enter in favor of all defendants.
So ordered.

 Although there was no evidence on which a finding against Rosa Sastre or Sas-tre could properly have been made, which defendant^) the judgment entered against is unclear, and given this Court’s disposition, it does not matter. For the sake of conciseness, both Sastre and the Trust will be referred to collectively as “the Trust” unless Sastre personally is meant.

 Sastre in fact paid another subcontractor for lumber delivered to the site, apparently in response to that supplier’s Ch. 254 mechanic’s lien on the property. That payment is irrelevant in any event to Sastre’s or the Trust’s liability to Rosano-Davis.

 No evidence would support a finding that Sastre or the Trust had a contract with Rosano-Davis. See Boswell v. Zephyr Lines, Inc., 414 Mass. 241, 250 (1993).

 Such a basis of quantum-meruit recovery differs from that allowing recovery when a contractor proves both substantial performance of a contract and a good-faith endeavor on its part fully to perform the contract. Peabody N.E., Inc. v. Marshfield, 426 Mass. 436, 442 (1998), quoting J.A. Sullivan Corp. v. Commonwealth, 397 Mass. 789, 796 (1986), quoting in turn Andre v. Maguire, 305 Mass. 515, 516 (1940); see also, e.g., PDM Mech. Contractors, Inc. v. Suffolk Constr. Co., 35 Mass. App. Ct. 228, 229 & 233-34 (1993).

 ‘The authority of an agent to bind a principal in a particular matter becomes a question of fact only when some evidence is introduced either of an express appointment by the principal with a delegation to the agent of specific duties or authority, or of conduct by the principal warranting an inference that the agent is acting on behalf, and with the knowledge and consent, of the principal.” Stamski and McNary, 1996 Mass. App. Div. at 200. “No such evidence was presented herein. ... The terms ‘architect’ and ‘agent’ are not... synonymous.” Id. Indeed, Tempest testified he was hired to draw plans and to “observe” work at the site, and not to supervise or oversee work — he was at the site every two weeks, at the most. He further testified he had not meant to suggest to Davis "that we were going to pay the bill and as [Sastre’s] agent, I couldn’t do that.”