MacDonald, D. Lloyd, J.
Before the Court is the defendants’ motion for summary judgment. It is ALLOWED for the reasons that follow.
Pertinent Facts
The case arises from the construction of a Brooks brand pharmacy in New Bedford. The defendant Brooks/Maxi Drug, Inc. (“Brooks”) entered into a contract (“the general contract”) with C.P.C. ‘76, Inc. (“C.P.C.”) to build the store. Brooks leased the premises from the defendant P.J.C. Realty Co., Inc. (“P.J.C. Realty") but executed the general contract as the “owner.” P.J.C. Realty was not a signatory to the contract. The building was constructed between August 2000 and March 2001.
On or about September 20, 2000, C.P.C., as general contractor, entered into a subcontract (“the subcontract”) with the plaintiff W.C. Smith & Son, Inc. (“Smith”) to do construction site work. C.P.C. is not a party to this action. The subcontract between C.P.C. and Smith identified Brooks as the “owner” of the store. Neither Brooks nor P.J.C. Realty were signatories on the subcontract. The subcontract provided that C.P.C. would pay Smith $273,850.00 for its work.
In June 2001 Smith filed a “Notice of Contract” in the Bristol County Registry of Deeds pursuant to the mechanics lien statute, G.L.c. 254, §4. The notice recited the contract with C.P.C. and the identity of Brooks and P.J.C. Realty as “owner.” It also noted the contract price, the amount of change orders and payments received to date.
Eventually Smith billed C.P.C. $252,850.00 for work it performed under their subcontract and an additional $30,833.49 for add-ons. C.P.C. received $218,277.00 in payment from Brooks on Smith’s requisitions for payment. C.P.C. in turn remitted that amount to Smith. At present there is an outstanding combined balance on the subcontract between Smith and C.P.C. and related add-ons of $61,202.49. That is the amount at issue in the case.
In March 2003 Smith filed an arbitration claim against C.P.C. in connection for the unpaid invoices. Smith alleges that Brooks was provided with a copy of the claim. The arbitration did not resolve the dispute, and in December 2003, C.P.C. filed a voluntary petition in bankruptcy. It appears that the bankruptcy filing put an end to Smith’s effort to get payment from C.P.C.
In February 2004, W.C. Smith filed this lawsuit against P.J.C. Realty and Brooks to recover the above amounts due from C.P.C. The complaint sounds in contract and quasi-contract. The defendants move for summary judgment on the basis that Smith’s recourse for amounts due pursuant to its subcontract is exclusively against C.P.C. inasmuch as there was no privity between Smith and them. Further, the defendants allege that Smith failed to comply with the requisites of G.L.c. 254 to create a mechanic’s lien that otherwise would have enabled Smith to proceed against them. In its complaint Smith made no claim or reference to a mechanic’s lien. However, in Smith’s opposition to the defendants’ summary judgment motion, Smith submits that it is entitled to the benefit of G.L.c. 254, §31’s special provisions for a subcontractor’s mechanic’s lien where its general contractor has filed for bankruptcy.
DISCUSSION
I. Standard of Review
Summary judgment is appropriate where there is no genuine issue of material fact and the moving party is entitled to judgment as a matter of law. Mass.R.Civ.P. 56(c); Casseso v. Commissioner of Corrections, 390 Mass. 419, 422 (1983); Community Nat’l Bank v. Dawes, 369 Mass. 550, 553 (1976). The moving party bears the burden of affirmatively demonstrating the absence of a triable issue. Pederson v. Time, Inc., 404 Mass. 14, 16-17 (1989). If the moving party does not bear the burden of proof at trial, it must either: 1) submit affirmative evidence negating an essential element of the non-moving party’s claim; or 2) demonstrate that the non-moving party’s evidence is insufficient to establish its claim. Kourovacilis v. General Motors Corp., 410 Mass. 706, 711 (1991). The non-moving party may not defeat the motion for summary judgment by resting merely on the allegations and denials in its pleadings, but must set forth specific facts with affidavits, deposition testimony, answers to interrogatories, or admissions on file showing that there is a genuine issue for trial. Mass.R.Civ.P. 56(e). “If the moving party establishes the absence of a triable issue, the party opposing the motion must respond and allege specific facts establishing the existence of a material fact in order to defeat the motion.” Pederson, 404 Mass. at 17. The court will interpret all inferences in the light most favorable to the non-mov *142 ing party. Blare v. Husky Injection Molding Sys. Boston, Inc., 419 Mass. 437, 438 (1995). Conclusoiy statements or argumentative assertions will not suffice. Key Capital Corp. v. M&S Liquidating Corp., 27 Mass.App.Ct. 721, 727-28 (finding insufficient “bare assertions and conclusions regarding the [party’s] understandings, beliefs and assumptions”).
II. The Contract and Quasi-Contract Claims
Smith has an insurmountable problem at the threshold with regard to its contract-based claims: “In the absence of a lien perfected under G.L.c. 254, an owner who enters into a general contract for improvements on real property is not ordinarily liable to subcontractors whose sole contractual arrangements are with the general contractor.” Brick Constr. Corp v. CEI Dev. Corp., 46 Mass.App.Ct. 837, 840 (1999); Evans v. Multicon Constr. Corp., 30 Mass.App.Ct. 728, 740 (1991).
The phrase, “not ordinarily liable,” as used in Evans and Brick, supra, has not been further defined other than by the Evans court’s illustrative hypothetical which posited a situation where “the owner agreed to pay to subcontractors all claims in connection with the owner’s job against the contractor which were reduced to judgment.” Evans, 30 Mass.App. at 740.
In a recent case the District Court Appellate Division, however, addressed a subcontractor’s quasi-contract and quantum meruit claim that was substantially similar to Smith’s. The court aptly rejected an expansive reading of the qualifying phrase in the Evans court’s opinion in the following terms:
Allowing a subcontractor to recover damages in a quasi-contract action against a property owner with whom that subcontractor was not in contractual privity would in essence eliminate the reason the long-lived mechanic’s-lien statute exists, and would render its strictly-construed provisions superfluous in their entirety. .The statute exists to provide security to subcontractors and others for the value of their goods and services provided to improve the owner’s real property, and it affords the protections it does likely because of the long-standing bar preventing a subcontractor’s recovery against a landowner when the general contractor fails to pay the subcontractor.
Rosano-Davis Inc. v. Sastre, 2004 Mass.App.Div. 55 (2004) (citing, inter alia, Tremont Tower Condo., LLC v. George B. H. Macomber Co., 436 Mass. 677, 679 (2002)).
There is no basis in the summary judgment record that would justify an exception to the general rule that an owner is not liable to subcontractors with whom the owner did not contract. Thus, Smith’s entitlement to relief is dependent upon its being able to demonstrate the existence of an enforceable mechanic’s lien.
III. W.C. Smith’s Lien Pursuant to G.L.c. 254, §31[1]
“Mechanic’s liens are created and governed purely by statute.” Tremont Tower at 679, citing G.L.c. 254. “The primary purpose of the [mechanic’s] lien is to provide security to contractors, subcontractors, laborers, and suppliers for the value of their services and goods provided for improving the owner’s real estate ... At the same time, the statute contains filing and notice requirements to protect the owner and others with an interest in the property.” National Lumber Co. v. United Cas. and Sur. Ins. Co., 440 Mass. 723, 726 (2004), quoting Hammill-McConnick Assocs., Inc. v. New England Tel. & Tel. Co., 399 Mass. 541, 542-43 (1987).
The mechanic’s lien statute provides that “[a] person who has entered into a written contract with an owner of real property for improvements to that property, or for the furnishing of equipment, appliances, or tools for such improvements, ‘shall have a lien upon such real property ... to secure the payment of all labor, including construction management and general contractor services, and material or rental equipment, appliances, or tools which shall be furnished by virtue of said contract.’ ” Tremont Tower, 436 Mass. at 679-80, quoting G.L.c. 254, §2. The statute provides explicit deadlines by which the contractor must provide notice, addresses lien priority and identifies steps necessary to maintain a lien once it is created and those steps necessary to enforce a lien once it is created. Id. at 680-81.[2]
Claimants must strictly comply with G.L.c. 254’s requirements in order to create and enforce a mechanic’s lien. Golden v. General Builders Supply LLC, 441 Mass. 652, 659 (2004) (“The mechanic’s lien statute must be strictly construed against the party asserting the lien . . .”); National Lumber Co. v. United Cas. & Sur. Ins. Co., 440 Mass at 726 (“A mechanic’s lien . . . can be enforced only by strict compliance with the statute”); Mullen Lumber Co. v. Lore, 404 Mass. 750, 752 (1989) (“The mechanic’s lien statute . . . compels strict compliance in order to obtain relief’); Street Lumber Co. v. Sullivan, 201 Mass 484, 485-86 (1909) (“The mechanic’s lien, having been conferred solely by statute, does not come into existence unless the statutory conditions are strictly followed”), cited with approval in Hammill-McConnick Assocs., Inc., 399 Mass. at 544. “Although not every procedural mistake is fatal . . . failure to comply normally results in dissolution of the lien ... or in failure of the lien to attach.” Lombardi, 64 Mass.App.Ct. at 493, quoting Mullen Lumber Co., 404 Mass. at 752-53; see also Ng Bros. Constr., Inc., 436 Mass. 638, 642 (2002).
G.L.c. 254, §31 is a statute that applies specifically to subcontractors.[3] It allows subcontractors to obtain a mechanic’s lien within one year after its general contractor files for bankruptcy. Brick Constr. Corp., 46 Mass.App.Ct. at 838.
*143 A. The Property Interests Encumbered by §31 Liens
A preliminary question is whether a Section 31 lien applies against the Brooks leasehold interest. Brooks claims that it does not.
Section 31 provides for a lien on “sums due or which later become due . . . from the general contractor on account of the work of such subcontractor.” However, liens pursuant to chapter 254 are encumbrances on real property, not on “sums” in of themselves. See G.L.c. 254, §§1, 2, 4; National Lumber Co. v. Lefrancois Constr. Corp., 430 Mass. 663, 668 (2000) (stating that a mechanic’s lien is an encumbrances on real property). G.L.c. 254, §1 provides that liens apply against “such interest in real property” owned by any party “authorizing” or “consenting” to a contractor’s work.[4] However, nothing in the statute expressly limits the scope of the word, “owner," to holders of fee simple absolute property interests.
Moreover, the SJC has applied mechanic’s liens arising under the other sections of G.L.c. 254 against ownership interests that are less than fee simple, specifically including leasehold estates. Forbes v. Mosquito Fleet Yacht Club, 175 Mass. 432, 437-38 (1900); see Webster Lumber & Supply Co. v. Erickson, 216 Mass. 81 (1913).
In Forbes, the Court interpreted the term “owner” in a prior version of the statute to encompass a lessee’s interest, at least for the duration of its lease term. 175 Mass. at 437-38. The court explained that the mechanic’s lien applied as against the lessee because the lessee had a property interest, and consented to the construction. Id. at 437-38. See also Webster Lumber & Supply Co., 216 Mass. at 81 (holding that a mechanic’s lien applied to the interest of a joint tenant because “(t]he term ‘owner’ as used in the first and third sections of the statute does not necessarily mean the owner in fee”).
“We interpret the statute to best effectuate the legislative intent, viewing the statute as a whole.” Tedford, 390 Mass. at 696, citing Registrar of Motor Vehicles v. Board of Appeal on Motor Vehicle Liab. Policies & Bonds, 382 Mass. 580, 585 (1981). There is no apparent principled reason to apply a different standard to the reach of a subcontractor’s lien under §31 than that of a general contractor and subcontractor lien under §§2 and 4 of the statute. Accordingly, Brooks’s leasehold interest is potentially subject to a Section 31 lien.
B. The Notice Required Under §31
Notice is fundamental to the enforcement of a lien. The reason is that “the owner shall have knowledge in advance of any supply of materials furnished ... so that he may, if he chooses to do so, avoid or prevent it.” Whitford v. Newell, 84 Mass. 424, 426 (1861).
Section 31 provides that a claimant does not obtain a mechanic’s lien “unless written notice thereof is given to the person owing such sums.” (Emphasis added.) Like the other requirements of the mechanic’s lien statute, §31’s notice provision should be construed to “protect the owner and others with an interest in the property.” See National Lumber Co. v. United Cas. & Sur. Ins. Co., 440 Mass. at 726. To that end, there is no lien unless and until there is statutory notice.
Addressing this issue in the context of a general contractor’s lien, the SJC held that “although there is no express articulation in the statute concerning the precise moment at which a lien under §2 comes into being, the terms of the statute appear to presuppose that the lien is created by the filing of the notice and that no lien exists prior to such filing.” Id at 683. The contractor may have a statutory right to such a lien but the lien itself does not exist until the contractor meets the notice requirement, thereby asserting that right. Id. at 682.
Here, Smith argues that it gave adequate written notice to both defendants in the form of, first, its June 2001 Notice of Contract filed in the Registry of Deeds pursuant to G.L.c. 254, §4, second, by virtue of its having provided Brooks and PJC Realty with its March 2003 “Demand for Arbitration” against C.P.C., and, third, by the service of the complaint in the current action. None of these three methods provided the defendants with written notice meeting the standards of G.L.c. 254, §31.
Notice by Registry Filing. G.L.c. 254, §§2 and 4 require claimants to give notice by filing in the registry of deeds. See National Lumber Co. v. Lefrancois Constr. Corp., 430 Mass. at 668. As such, notice by a filing at the registry of deeds is given legislative sanction. Smith, however, obtains no benefit from his June 2001 filing with the registry because the text of §4 conditions the creation of a lien thereunder on actual notice in addition to a registry filing: “Upon filing or recording a notice [in the registry of deeds], and giving actual notice to the owner of such filing, the subcontractor shall have a lien upon such real property, [etc.]” (Emphasis added.)[5]
Moreover, §31 specifically conditions the effectiveness of a lien upon “written notice thereof [being] given to the parties owing such sums.”
Accordingly, the evidence of Smith’s registry filing is insufficient to create a mechanics lien under §31.
Notice by Service of the Complaint. Smith further argues that notice of the lien pursuant to §31 was accomplished by the filing of the complaint in this action. However, a claimant cannot commence proceedings to enforce a lien that does not exist. A claimant must first create the lien by satisfying the requirements set in the mechanic’s lien statute. Tremont Tower, 436 Mass. at 683.
In the notice provision of §31, the legislature provided a procedural safeguard to those whose property *144 is at risk. See National Lumber Co. v. United Cos. & Sur. Ins. Co., 440 Mass. at 726. To interpret G.L.c. 254 to permit simultaneous notice and enforcement of a lien would undermine this procedural protection. A final defect in Smith’s argument as to the sufficiency of the complaint as notice is that in the complaint itself there is no mention that Smith is seeking to claim or enforce a mechanic’s lien.
The Arbitration Demand. Finally, Smith alleges that the defendants received written notice of their lien under §31 by way of its “Demand for Arbitration” with the general contractor that Smith filed with the American Arbitration Association in March 2003. An unattested copy of the demand was provided to the Court along with the plaintiffs opposition to summaiy judgment. However, there is no evidence in the summaiy judgment record meeting the requirements of Rule 56(e) that Brooks or P.J.C. Realty were privy to this demand. Thus, it is of no effect.
Moreover, even if the defendants were privy to Smith’s demand for arbitration, the arbitration demand did not state that Smith was claiming a lien on sums it was owed as required by c. 254, §31. Accordingly, in this instance — as with the registry filing and the service of the complaint — Smith has failed to meet its burden to present evidence to contradict the defendants denial of having received notice that met the statutory requirements. See Pederson, 404 Mass. at 17. Thus, Smith had no enforceable §31 lien. And with no conventional contractual remedy available for the reasons stated earlier, Smith’s complaint must be dismissed.
ORDER
The defendants’ motion for summaiy judgment is ALLOWED. Judgment shall enter for them.

Although the Court has chosen to dispose of the case on the substantive merits, there is an alternative ground for allowing the defendants’ summary judgment motion. That ground is the circumstance that in its opposition papers Smith failed to respond to the defendants’ statement that Smith “did not and has not filed a mechanic’s lien in Massachusetts with regard to a claim for outstanding payments owed for services and products provided at the construction of the New Bedford Brooks Pharmacy store.” (Defs.’ Concise Statement of Undisputed Facts at 1.) Superior Court Rule 9A(b)(5) provides that, “[flor purposes of the motion for summary judgment, facts contained in [the moving party’s statement of facts] shall be deemed to have been admitted unless controverted in the manner set forth [by this rule].” Smith did not do so. Under such circumstances, this Court may adopt all uncontroverted facts when considering the motion. Sullivan v. Liberty Mut Ins. Co., 444 Mass. 34, 47 (2005). The Court does so as an alternative basis for its decision herein.

The SJC (Sosman, J.) in Tremont Tower provides a succinct guide to the operation of G.L.c. 254 and the creation, modification and dissolution of mechanic’s liens. The court noted the deadlines by which the contractor must record the “notice of contract,” which vary depending on the way that the contract is either terminated or completed. G.L.c. 254, §§2, 2A, 2B; id. at 680. Such liens have “priority over all other later-recorded encumbrances on the property” as of the date of the notice. Id.
In order to enforce the lien that has been recorded pursuant to a notice of contract, a contractor first “must record a statement of account, setting forth the amount due or to become due.” Id., quoting G.L.c. 254, §8. This must be filed within 90 or 120 days, depending on the way that the contract is either terminated or completed. See id. “Failure to file a statement of account within these time frames results in the lien’s being ‘dissolved.’ ” Id., at 681, quoting G.L.c. 254, §8.
There are further requirements to enforce the lien. After filing the statement of account, the contractor must file a civil action “within ninety days of the recording of the statement of account, and, within thirty days of filing that suit, the contractor must record an attested copy of the complaint.” Id., quoting G.L.c. 254, §§5, 11. “Again, the lien ‘shall be dissolved’ if the contractor fails to meet either of those deadlines.” Id.

General Laws c. 254, §31 provides: “In the event that a general contractor or a subcontractor on any construction work is adjudged a bankrupt, or makes a general assignment for the benefit of creditors, or if a receiver is appointed on account of the insolvency of the general contractor or of a subcontractor, at a time when there are sums due or which later become due from the person contracting for the work on account of the work of such general contractor or when there are sums due or which later become due from the general contractor on account of the work of such subcontractor, each person furnishing labor or labor and materials to such general contractor or such subcontractor shall have a lien each in proportion to the amount of his respective claim on all such sums due or which later become due in connection with the particular construction work, provided, that a lien on any such sums arising out of the recording or filing of a document or notice in accordance with the provisions of this chapter or in accordance with any other applicable provisions of the general laws shall have priority over any lien secured pursuant to this section, and provided further, that such lien shall not take effect unless written notice thereof is given to the person owing such sums. Proceedings to enforce a lien secured under this section shall be by a civil action in the superior court within one year after the adjudication of bankruptcy, or the assignment for the benefit of creditors or the appointment of a receiver, and the plaintiff shall bring his action in his own behalf and in behalf of all other persons in interest who shall become parties. All other parties in interest may appear and have their rights determined in such action, and, at any time before entry of final judgment, upon the suggestion of any party in interest that any other person is or may be interested in the action, or of its own motion, the court may summon such person to appear in said cause on or before a day certain or be forever barred from any rights thereunder. The court may in its discretion provide for notice to absent parties in interest. The other provisions of this chapter shall not apply to any such civil action. The provisions of this section shall not apply to any contract with the commonwealth or with any political subdivision thereof or any other public instrumentality.”

In relevant part G.L.c. 254, §1 provides: “A person to whom a debt is due for personal labor performed in the erection, alteration, repair or removal of a building or structure upon land or improvement or alteration to real property, by virtue of an agreement with, or by consent of, the owner of such building or structure, or of a person having authority from or rightfully acting for such owner in procuring or furnishing such labor, shall, under the provisions of this chapter, other than section four, have a lien upon such building or structure and upon such interest in such real property, land, building, structure, or improvement owned by the party authorizing or consenting to said work, for not more than thirty days’ work actually performed for the ninety days next prior to his filing a statement as provided in section eight.”

Although distinct from the discrete issue of notice, it is apt to note that even if Smith’s initial filing of the notice of contract with the registry had created a mechanics lien at that juncture, it appears on the record before the Court that the lien would have dissolved prior to the time the present action was brought. A mechanic’s lien created pursuant to the notice of contract is “dissolved unless the contractor [or] subcontractor . . . [thereafter] file[s] or record[s] in the registry of deeds ... a just and true account of the amount due or to become due” within three alternative periods, G.L.c. 254, §8, and then brings a civil action to enforce the claim within 90 days. There is no evidence in the record that the instant litigation was commenced within such 90-day period. As a result, any lien that may have been created dissolved. Golden, 441 Mass. at 659 (‘The mechanic’s lien statute does not permit the resurrection of a lien, or the creation of a new lien, once the lien has been extinguished by a failure to comply with the statute”); see Mullen Lumber Co., 404 Mass. at 755-57.